[L. A. No. 14302.   In Bank.—June 26, 1936.]

FOSTER C. PHELPS et al., Appellants, v. AMERICAN MORTGAGE COMPANY (a Corporation) et al., Defendants; MORTGAGE GUARANTEE COMPANY (a Corporation), Respondent.

Reed & Vernon, Otho S. Vernon and Thos. B. Reed for Appellants.

Alvan M. Palmer for Respondent.

SHENK, J.—The plaintiffs sued to have it declared that a certain deed of trust securing notes held by them is a first lien on the real property conveyed thereby, and to cancel a purported deed of reconveyance executed by the trustee named in said deed of trust, and for other appropriate relief. The defendant Mortgage Guarantee Company demurred generally and specially to the plaintiff's fourth amended complaint. Its demurrer was sustained without leave to the plaintiffs to amend. The plaintiffs have appealed from the judgment entered in conformity with the order.

The complaint contains allegations of the following facts: On November 22, 1926, Arthur and Nellie Gilman, owners of the Nellman Apartments in Los Angeles, executed to American Mortgage Company 125 promissory notes in the principal sum of $1,000 each, bearing interest at eight per cent, and due November 22, 1931. They also executed a deed of trust on the Nellman Apartments to secure payment of the notes. Title Guarantee and Trust Company was named therein as the trustee, and American Mortgage Company was named as the beneficiary. It was the intention of the parties to execute said deed of trust as a first lien on said property and the deed of trust so recited.

On the same day, viz., November 22, 1926, the Gilmans also executed to American Mortgage Company their additional promissory note for $60,000, due November 22, 1929, with interest at eight per cent per annum, together with a second lien trust deed on the same property to secure repayment of the $60,000 loan.

Both trust deeds were filed for record on November 23, 1926. The first trust deed, given to secure the 125 $1,000 notes, was recorded in book 6545, at page 8, of the Official Records of Los Angeles County, while the second trust deed was recorded in a lower numbered book, viz., book 6461, at page 205, of the same records.

The plaintiffs became the owners and holders of 73 of the 125 notes, for value, prior to the first day of January, 1931, which was prior to maturity. The owners of the remaining notes, who were unknown to the plaintiffs, were sued fictitiously as defendants.

Title Guarantee and Trust Company, as trustee under the second trust deed, gave notice of default and sale pursuant to the terms thereof. It held a sale of the property accordingly and executed its trustee's deed to American Mortgage Company, all without any actual notice to or knowledge on the part of the plaintiffs. American Mortgage Company of California is alleged to be the successor in interest of all properties of the American Mortgage Company, and that it received a deed to the Nellman Apartments from its predecessor with full knowledge of all the foregoing facts.

On February 13, 1931, Title Guarantee and Trust Company, as trustee under the first deed of trust, without authority and contrary to the terms of that deed of trust, and without consideration, executed to American Mortgage Company of California a deed of reconveyance purporting to retransfer the Nellman Apartments conveyed to it as trustee under said first deed of trust, and to release that property from the lien of said deed of trust, all with knowledge on the part of the trustee and said American Mortgage Company of California of the outstanding rights of the plaintiffs thereunder, and that the notes of the plaintiffs had not been paid. The deed of reconveyance was filed for record on February 13, 1931, and is alleged to have been unauthorized, wholly without consideration, and that it constitutes a hindrance and obstruction and a cloud upon the superior rights of the plaintiffs.

On February 14, 1931, American Mortgage Company of California executed its grant deed to the property to Fred and Jessie Giesey, which was recorded on the same day. The grantees were employees of American Mortgage Company

of California, and they gave no consideration for the deed. On the same day the Gieseys executed a promissory note to Mortgage Guarantee Company in the principal sum of $80,000 due in three years, and a deed of trust of the real property to Title Guarantee and Trust Company as trustee and said Mortgage Guarantee Company as beneficiary, as a purported first lien on the property so conveyed in trust, all without any consideration passing to the Gieseys for said note and deed of trust. It is further alleged that Mortgage Guarantee Company had knowledge that the plaintiffs were the owners and holders of 73 of said 125 notes, and that said notes were unpaid, and that the request to reconvey and the deed of reconveyance were without authority and the reconveyance and release therefore invalid.

On March 3, 1931, the Gieseys executed a grant deed to American Mortgage Company of California, without any consideration therefor, which deed was recorded on the same day.

All of the persons herein mentioned who are not designated as plaintiffs were sued as defendants in the action. The plaintiffs sought to have the deed of reconveyance canceled and the priority of their first lien under the $125,000 deed of trust established as against all of the defendants. General allegations appear that the defendants claim some right or title under the deed of reconveyance or otherwise as against the rights of the plaintiffs in said first deed of trust and that any claim of the defendants as against the plaintiffs' lien rights is without right and is junior and inferior to the plaintiffs' lien rights under said $125,000 deed of trust.

The Mortgage Guarantee Company, the beneficiary under the $80,000 trust deed executed by the Gieseys, interposed its demurrer to the complaint, specifying both general and special grounds, with the result hereinabove noted. The question for determination is whether the complaint states a cause of action as against the demurring defendant, who will hereinafter be referred to as the defendant.

The defendant conceives the action to be one sounding in tort. It contends that, inasmuch as the plaintiffs have failed to allege any specific acts of fraud on the part of the defendant, and apparently are unable to allege such specific acts of fraud or conspiracy to defraud, they necessarily will be unable to state a cause of action, and that the general

and special demurrer, based on its contention in that regard, was properly sustained. It must also have been the opinion of the trial court that, inasmuch as the $125,000 deed of trust was recorded in a higher numbered volume in the official records than the $60,000 deed of trust, such fact constituted the latter lien the senior, and that therefore active fraud alone on the part of the defendant could upset the consequences. But we think this view is a misconception of the true purport of the allegations. The complaint, it is true, is inartistically drawn and is replete with conclusions of the pleader and argumentative matter. There is, however, support for our conclusion that the facts alleged constitute a cause of action to cancel the unauthorized deed of reconveyance and release and to quiet or establish the plaintiffs' prior rights as lien-holders under the $125,000 deed of trust as against the adverse claims of subsequent purchasers and encumbrancers which are without right, i. e., as against such purchasers and encumbrancers taking with knowledge of the unauthorized and voidable nature of the deed of reconveyance, or who have paid no consideration. ▮ It is the province of a court of equity to protect the prior rights of lien-holders as against adverse claimants and to remove a cloud upon their title by ordering the cancellation of an unauthorized instrument of release or reconveyance. (*Chesney* v. *Valley Live Stock Co.*, 34 Wyo. 378 [244 Pac. 216, 44 A. L. R. 1255], and cases cited in the opinion therein; Civ. Code, sec. 3412.) The rule is stated generally: "In equity, a release, unauthorized by the terms of the trust or by the *cestui que trust,* will have no effect upon the deed of trust as between the original parties or as to subsequent purchasers with notice." (*Winkel* v. *Haning,* 264 Ill. App. 231, 241, 242, citing cases.) In *Scardone* v. *Sozzi,* 108 N. J. Eq. 415 [155 Atl. 376], the statement appears that "It has been the law for many years that cancellation of a mortgage on the record is only *prima facie* evidence of its discharge, and it is left to the owner making the allegation to prove the canceling to have been done by fraud, accident or mistake. Such proof being made the mortgage will be established even against subsequent purchasers or mortgagees without notice . . . (citing cases)"; and quoting from a cited case (*Heyder* v. *Excelsior B. L. Assn.*, 42 N. J. Eq. 403 [8 Atl. 810, 59 Am. Rep. 49]), the court said: " 'Between a mortgagee

whose mortgage has been discharged of record solely through the unauthorized act of another party, and a purchaser who buys the title in the belief, induced by such cancellation, that the mortgage is satisfied and discharged, the equities are balanced, and the rights in the order of time must prevail. The lien of the mortgage must remain despite the apparent discharge.' "

We think that the order of recording the deeds of trust executed concurrently and intended, as appears from the allegations of the complaint, to be first and second liens in the reverse order of the record sequence, does not militate against the plaintiffs' claims nor excuse the effect of notice, either actual, or constructive by virtue of the specific provisions appearing on the face of the instruments of record. The time of the day when the concurrent deeds of trust, both filed for record on November 23, 1926, were offered for that purpose does not appear. If they were filed at the same time or in their proper order and the reverse order of recordation was an inadvertence, that mistake at least, pursuant to the principles indicated in *Scardone* v. *Sozzi, supra*, should not be permitted to alter the intended relations of the parties, even as to a subsequent purchaser or encumbrancer for value, when an examination of the recorded documents would provide notice of the true priorities. This observation is obviously also applicable to the facts alleged if the order of recordation was intentional on the part of those by whom the recordation was requested.

The question immediately affecting the defendant is whether it was misled or injured by the unauthorized satisfaction or reconveyance under the first deed of trust. (*Shaffer* v. *McCloskey*, 101 Cal. 576, 581 [36 Pac. 196]; *Young* v. *Pitts*, 155 S. C. 414 [152 S. E. 640].) If, as it is alleged in the complaint, the defendant had knowledge of the unauthorized character of the reconveyance and therefore of the plaintiffs' outstanding rights under the first deed of trust, it may not be heard to contend that its position is in anywise altered by the payment of a consideration for the encumbrance it holds, if it paid such consideration. (*Young* v. *Pitts, supra.*)

By parity of reasoning the plaintiffs are not compelled first to bring an action at law to recover on the notes. Under the provisions of the first deed of trust they were

entitled to pursue the security created for their benefit. Having been wrongfully deprived of their security by the unauthorized act of the trustee thereunder, they could invoke the aid of equity to re-establish and protect their rights, without first bringing an action at law. (*Chesney* v. *Valley Live Stock Co., supra.*)

We conclude that the complaint sufficiently alleges a cause of action as against the defendant, Mortgage Guarantee Company, as an adverse claimant without right as against the alleged prior lien rights of the plaintiffs; and that it is not open to attack on general demurrer.

The foregoing also disposes of the special grounds of demurrer without necessity of further discussion.

The judgment is reversed.

Thompson, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.