[No. E000680. Fourth Dist. Div. Two. June 24, 1985.]

MICHAEL A. DONAHUE et al., Plaintiffs and Appellants, v.
DARRYL R. LeVESQUE et al., Defendants and Respondents.

COUNSEL

Smith & Andrus and Dana D. Andrus for Plaintiffs and Appellants.

Covington & Crowe and Edward A. Hopson for Defendants and Respondents.

OPINION

**MORRIS, P. J.**—Plaintiffs seek review of a judgment granting them the right to prepay an all-inclusive note and deed of trust held by defendants, but granting defendants the right to charge plaintiffs a prepayment penalty and awarding defendants, among other things, both the interest lost by defendants due to the failure of plaintiffs to make required payments on the all-inclusive note and the nonprincipal portion of advances made by defendants on the underlying notes.

On appeal plaintiffs contend that although the trial court was correct in granting plaintiffs the right to prepay the all-inclusive note, it erred in assessing a prepayment penalty because none was agreed to contractually. Because plaintiffs are correct on these points, the trial court must consider on remand the effect of defendants' failure to make a proper demand when plaintiffs made their offer to pay off defendants' equity in September 1980, and recompute plaintiffs' liability for advances and interest accordingly.

Plaintiffs also contend that even if they are found liable for both interest and advances, the trial court erred by computing interest lost and advances made in such a way as to award defendants a double recovery in the amount of their advances. We agree.

### FACTS

On August 30, 1979, defendants sold a single-family residence to plaintiffs. At the time of the sale, defendants owed approximately $42,700 to the United California Bank (herein UCB), secured by a first deed of trust on the property, and approximately $9,400 to Pacific Finance, secured by a second deed of trust on the property. As a part of the purchase price, plaintiffs executed an all-inclusive note and deed of trust in the amount of $60,000. The all-inclusive note contained the following pertinent provisions:

"At all times the equity of the payee of this note shall be the difference between the unpaid balance of this note and the unpaid balance of the included notes . . . ." (B.)

"Any prepayment of all or any portion of the unpaid balance permitted under the terms of this note may be made upon the written requirement by trustor that holder prepay a proportionate amount of the unpaid balance of the included notes if such included notes can be prepaid, provided however that any such obligation of holder shall be conditioned upon the payment by trustors of any additional amount required by the holders of the included notes as a penalty or consideration for such prepayment." (D.)

"Should default be made in the payment by Trustor when due, the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Upon any such default by Trustor, any payment made by the holder to prevent or cure a default in the included deed of trust shall be added to the then unpaid balance of this note except such amount that is credited upon the principal balance of such included note." (G.)

In August of 1980, plaintiffs decided to sell the property and wished to pay off the balance due on the defendants' equity on the all-inclusive note. Plaintiffs set up an escrow for their sale and made demand on the defendants for a statement of the amount due to pay off their equity and for reconveyance of the all-inclusive deed of trust. Defendants responded by refusing to demand payoff of their equity alone, and demanded full payment of the contract balance on the ground that the note did not provide for any prepayment. Defendants indicated their willingness to accept early prepayment of the entire principal balance of the all-inclusive note together with a prepayment "bonus."

Contending that defendants had breached the terms of the all-inclusive note and deed of trust, the plaintiffs then ceased making payments on the all-inclusive note on October 1, 1980. Defendants began to make advances on the underlying notes secured by the first and second trust deeds. As each

payment was made, the nonprincipal portion of the advance was added to the balance of the all-inclusive note, as authorized by paragraph (G) of the all-inclusive note.

Defendants made the payments to the two senior lienholders through the end of 1981. From January 1982 through November 1, 1983, by virtue of a court order, plaintiffs paid the payments on the encumbrances which were senior to the all-inclusive trust deed. No payment was made by plaintiffs on defendants' equity during this period.

In August of 1981, the plaintiffs commenced this action for breach of contract and declaratory relief requesting the court to order defendants to accept, in full satisfaction of the all-inclusive note and deed of trust, the amount of defendants' equity as computed as of September 11, 1980. Plaintiffs also requested an order cancelling the all-inclusive note and reconveying the all-inclusive deed of trust, and a judicial determination that the payoff of defendants' equity could not be conditioned upon the payment of any prepayment penalties.

The trial court held that plaintiffs had a right to prepay defendants' equity and thus pay off the all-inclusive note, but that it was also proper for defendants to demand a prepayment penalty and that the total amount of the demand was not tendered by plaintiffs. The judgment decreed that plaintiffs be allowed to pay off the all-inclusive note and deed of trust held by defendants by paying off the total of: (a) defendants' equity, in the amount of $8,268.38, (b) advances made by defendants, in the amount of $6,326.10, (c) interest lost by defendants due to the failure of plaintiffs to make the required payments, together with the interest on advances, in the amount of $9,587.44, (d) impound reimbursement in the amount of $406.83, (e) late charges in the amount of $401.44, and (f) a prepayment penalty in the amount of $2,347.69, for a total payment of $27,337.88 together with interest. On November 1, 1983, plaintiffs paid defendants $27,618.36 in satisfaction of the note. Plaintiffs now appeal the judgment of the trial court.[1]

## DISCUSSION

The resolution of this appeal necessarily involves the interpretation of Civil Code section 2954.9.[2] In 1979, the year of the sale at issue in this

---

[1]Although plaintiffs have satisfied the judgment, no waiver of plaintiffs' right to appeal occurred. Deprivation of the right to appeal ensues only when it is shown that the payment of the judgment was by way of compromise or with an agreement not to take or prosecute an appeal. (*Haddad* v. *Pazar* (1958) 156 Cal.App.2d 695, 698 [320 P.2d 207].) There is no showing of such an agreement or compromise in this case.

[2]All code references herein are to the Civil Code.

case, that code section read: "(a)(1) Except as otherwise provided by statute, where the original principal obligation is one hundred thousand dollars ($100,000) or less, the borrower under any note or evidence of indebtedness secured by a deed of trust or mortgage, or any other lien on real property shall be entitled to prepay the whole or any part of the balance due, together with accrued interest, at any time. [¶] (2) Nothing in this subdivision shall prevent a borrower from obligating himself, by an agreement in writing, to pay a prepayment charge. [¶] (3) This subdivision does not apply *during any calendar year* to a bona fide loan secured by a deed of trust or mortgage given back *during such calendar year* to the seller by the purchaser on account of the purchase price if the seller does not take back four or more such deeds of trust or mortgages *during such calendar year*. Nothing in this subdivision shall be construed to prohibit a borrower from making a prepayment by an agreement in writing with the lender." (Italics added.)

At trial defendants contended that subdivision (a)(3) applied to them because the amount involved was under $100,000, was secured by a deed of trust and because they, as the sellers, had not taken back four or more deeds of trust during 1979, and that this subdivision gave them the right to bar prepayment of the all-inclusive note by the plaintiffs. The plaintiffs contended that section 2954.9 gave defendants the right to restrict prepayment only in the calendar year of sale, i.e., 1979.

The trial court apparently concluded that defendants had the right to bar prepayment, but that they had not completely barred any prepayment in the loan documents. Rather, by the agreement they merely restricted any prepayment by providing that the buyers would be required to pay a prepayment penalty in an unspecified amount. Consequently, the trial court's judgment allowed the plaintiffs to pay off defendants' equity in the property and limited the prepayment penalty to the charges permitted by section 2954.9, subdivision (b).

I

*The Right to Prepay*

The defendants contend that a loan meeting the requirement of section 2954.9, subdivision (a)(3) is completely nonprepayable. To the contrary, we hold that subdivision (a)(3) did not affect defendants' right after the calendar year of sale (1979) to prepay the whole or any part of the balance due at any time pursuant to subdivision (a)(1).

Where the language of a statute presents no question of meaning, there is no room for construction and the court should not indulge in it.

(*Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].) ■ The courts must give effect to the plain meaning of the statute when its language is clear and unambiguous. (*Smith* v. *Union Oil Co.* (1913) 166 Cal. 217, 224 [135 P. 966].) ■ Subdivision (a)(1) of section 2954.9 states that where the original principal obligation is $100,000 or less, and is secured by a deed of trust, the buyer has an absolute right to prepay the whole or any part of the balance due, together with accrued interest at any time. Subdivision (a)(3) creates an exception to this absolute right to prepay, stating that the absolute right to prepay does not apply during "any calendar year to a bona fide loan secured by a deed of trust or mortgage given back during such calendar year . . . if such seller does not take back four or more such deeds of trust or mortgages during such calendar year." The exemption clearly only applies during the calendar year of sale. After the end of the calendar year in which the sale occurs, the loan may be prepaid as provided in subdivision (a)(1).

Defendants' contention that a loan which satisfies the requirement of subdivision (a)(3) is completely nonprepayable is incorrect because such a construction of that subdivision would render the first two uses of the phrase "during any calendar year" meaningless. Subdivision (a)(3) would then read: "This subdivision does not apply to a bona fide loan secured by deed of trust or mortgage given back to the seller by the purchaser on account of the purchase price if seller does not take back four or more such deeds of trusts or mortgages during any calendar year. Nothing in this subdivision shall be construed to prohibit a borrower from making a prepayment by an agreement in writing with the lender." This would achieve the meaning which defendants urge was intended by the Legislature in drafting subdivision (a)(3). Clearly, however, had the Legislature intended the statute to take on such a meaning, it would not have expressly limited its application by including the words "during any calendar year" in the introductory language of the subdivision.

■ As many experts have noted, the exception to the absolute right to prepay created by subdivision (a)(3) is an income tax oriented exception designed to enable the seller to protect his contract for an installment sale under the income tax laws. (See Witkin, Summary of Cal. Law (8th ed., 1984 supp. to vol. 3) Security Transactions in Real Property, § 64, p. 40; 1 Miller & Starr, Current Law of Cal. Real Estate, pt. 1, §§ 3:69-3:70, pp. 447-450.) In 1979, Internal Revenue Code section 453 allowed the tax treatment of the gain received by the seller in an installment sale to be spread over the life of the purchase agreement if the sale qualified as an installment sale. To qualify as an installment sale, the seller must have received less than 30 percent of the gross sales price in the year of sale and

at least two payments on the purchase price over a period of two tax years. (Rev. Rul. 69-462.) If the sale did not qualify as an installment sale, the seller would be required to pay tax on the full amount of the gain realized on the property even though the gain is represented by the proceeds of the note received by the seller. (5 Miller & Starr, Current Law of Cal. Real Estate, § 33.1, p. 291.) ■■■ We conclude that section 2954.9, subdivision (a)(3), provided an exception to the rule allowing a borrower a complete right to prepay, but only during the calendar year of sale.

## II

### The Prepayment Penalty

■■ Plaintiffs next contend that because they had the right to prepay the loan after 1979, no prepayment penalty could be charged to them because none was agreed to contractually. We agree that there was no provision in the note authorizing a prepayment penalty within the meaning of section 2954.9, subdivision (a)(2).

As previously stated the trial court held that the defendants, as the sellers, had the right to bar or restrict the prepayment of the subject loan by the plaintiffs, but that they had not completely barred any prepayment by the plaintiffs in the loan documents. The court found that they had merely restricted any prepayment by providing that the plaintiffs would be required to pay a prepayment penalty in an unspecified amount. The trial court then concluded that the defendants had the right to extract a prepayment penalty from the plaintiffs but in an amount that was limited by subdivision (b) of section 2954.9.

Subdivision (a)(2) of section 2954.9 states that "Nothing in this subdivision shall prevent a borrower from obligating himself, by an agreement in writing, to pay a prepayment charge." Subdivision (b) of section 2954.9 limits any prepayment charge which has been agreed to by the borrower stating that "Except as otherwise provided in Section 10242.6 of the Business and Professions Code, principal and accrued interest on any loan secured by a mortgage or deed of trust on real property containing only a single family owner occupied dwelling may be prepaid in whole or in part at any time but only a prepayment made within five years of the date of execution of such mortgage or deed of trust may be subject to a prepayment charge and then solely as herein set forth. An amount not exceeding 20 percent of the original principal amount may be prepaid in any 12-month period without penalty. A prepayment charge may be imposed on any amount prepaid in any 12-month period in excess of 20 percent of the original principal amount of the loan which charge shall not exceed an amount

equal to the payment of six months' advance interest on the amount prepaid in excess of 20 percent of the original principal amount."

The sole reference to a prepayment penalty is contained in paragraph D of the all-inclusive note. Paragraph D stated: "Any prepayment of all or any portion of the unpaid balance permitted under the terms of this note may be made upon the written requirement by trustor that holder prepay a proportionate amount of the unpaid balance of the included notes, if such included notes can be prepaid, provided however that any such obligation of the holder shall be conditioned upon the payment by trustors of any additional amount required by the holders of the included notes as a penalty or consideration for such prepayment."

Apparently the trial court interpreted this provision to give the defendants the right to assess a prepayment penalty fee to plaintiffs in an unspecified amount and then held it to be limited by subdivision (b). We interpret paragraph D as stating that if any prepayment of the unpaid balance is permitted under the terms of the note, plaintiffs may require that defendant prepay the proportionate amount of the unpaid balance of the included notes to UCB or Pacific Finance if they can be prepaid. Such prepayment is further conditioned upon the payment by plaintiffs of any additional amount required by UCB or Pacific Finance as a penalty or consideration for such prepayment of the included notes, so that if the application of excess payments made by the plaintiffs to the underlying loans resulted in a prepayment penalty being assessed to the defendants, defendants had the right to receive reimbursement for that penalty from plaintiffs.

There was no evidence presented that the defendants had been assessed a prepayment penalty by the holders of the included notes. Therefore, because plaintiffs had the right to prepay the evidence of their indebtedness, i.e., the all-inclusive note, after the calendar year of sale and could be subjected to a prepayment penalty only if they had so agreed in writing (§ 2954.9, subd. (b)), the trial court improperly allowed the assessment of a prepayment penalty in the amount of $2,347.69.

### III

#### *Double Recovery*

Because the trial court was incorrect in holding that defendants "had a right to demand payment of their equity in the subject property together with a prepayment penalty," upon remand the court must reassess plaintiffs' suit for breach of contract and declaratory relief. If the trial court finds that defendants breached the contract, it should consider whether plaintiffs had

a right to stop making the required payments on the all-inclusive note, and in turn whether it was proper to hold plaintiffs liable for interest lost on the all-inclusive note by defendants. To the extent the trial court on remand may still hold plaintiffs liable for the interest lost and advances made, we next turn to plaintiffs' contention that the judgment under review in part provided defendants with a double recovery.

■ Plaintiffs specifically contend that the trial court awarded defendants a double recovery in part by allowing defendants both the full amount of the interest lost due to plaintiffs' failure to make required payments on the all-inclusive note and the advances defendants made on the nonprincipal portion of the underlying notes. We agree.

The all-inclusive note was in the principal amount of $60,000, payable at the rate of 10½ percent per annum, principal and interest, payable in installments of $548.84, and impounds as required, on the first day of each month.

After examining defendants' spread sheets and reading defendants' trial brief, the trial court awarded defendants the full interest lost due to plaintiffs' failure to make the required monthly payments on the all-inclusive note in an amount claimed by defendants, i.e., $9,587.44 (of which approximately $7,500 was for all-inclusive note interest not paid when due and approximately $2,000 was for interest assessments on the advances by defendants), together with the nonprincipal portion of the advances made by defendants on the underlying notes, i.e., $6,326.10. Plaintiffs argue that separate credit for these two items results in double recovery, because the advances to keep current the underlying note payments would have been recovered by the all-inclusive note payments not made. We agree.

We find this to be true because defendants would not have received the benefit of most of the $7,500 of the interest that assumably should have been paid on the all-inclusive note because in turn defendants were required by the all-inclusive note to make the payments on the underlying notes, including the $6,326.10 defendants advanced to cover the nonprincipal portion of those underlying notes. Therefore, since the trial court *separately* credited defendants for the $6,326.10 nonprincipal portion advanced on the underlying notes pursuant to paragraph G, in item (b) of the judgment, the court should have subtracted that amount from the approximately $7,500 credit to defendants in item (c) for the all-inclusive note interest not paid by plaintiffs when due.

Accordingly, item (b) was correct, but item (c) of the trial court's judgment should have shown: Interest lost by defendants due to the failure of

plaintiffs to make the required payments, together with interest on advances, $3,261.34 ($9,587.44—$6,326.10).

### DISPOSITION

The judgment is reversed and the case remanded for the trial court to reconsider plaintiffs' cause of action for breach of contract and declaratory relief in light of this opinion and to recompute the payout accordingly.

Appellants shall recover costs on appeal, the same to be determined by the trial court.

Kaufman, J., and McDaniel, J., concurred.