[No. H000951. Sixth Dist. Aug. 20, 1986.]

PACIFIC TRUST COMPANY TTEE, Plaintiff and Appellant, v.
FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Watson, Tedesco & Alphonse and Vincent N. Tedesco for Plaintiff and Appellant.

Shafton & Hager, Daniel L. Shafton, Jerry A. Hager and Walter L. Blackwell III for Defendant and Respondent.

**OPINION**

**AGLIANO, P. J.—**

I

Plaintiff, Pacific Trust Company TTEE, Community Hospital of Los Gatos-Saratoga Pension Trust #16075, appeals from a summary judgment

entered in favor of defendant Fidelity Federal Savings and Loan Association. The parties have presented questions of law for our independent review by agreeing certain material facts are undisputed. (*AARTS Productions, Inc.* v. *Crocker Nat. Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) We agree with the trial court that a junior trust deed holder who seeks to take over a senior trust deed lien by paying it off must pay what the borrower was obliged to pay under the contract, including any prepayment penalty. Consequently we affirm the judgment.

## II

### Undisputed Facts

On May 22, 1980, the borrowers, Charles and Sharon Acker and Kurt Kuester, borrowed $200,000 from defendant Fidelity Federal, in exchange for a promissory note secured by a recorded deed of trust on the borrower's realty in Santa Clara County. Defendant is a federal association chartered by the Federal Home Loan Bank Board.

The note provided: "Borrower may prepay the principal amount outstanding in whole or in part." An amendment further provided: "The undersigned [borrower] reserves the right to make additional payments of $100.00 or multiples thereof, referred to herein as 'prepayments,' at any installment date [over the regular monthly installment of $2,449.00] on condition that, in the event that the aggregate amount of any such prepayments during any calendar month period preceding and including the date of the latest prepayment, exceeds twenty percent (20%) of the original principal amount of the loan evidenced by this note, the undersigned agrees to pay, as consideration for the acceptance of such prepayment, one hundred eighty (180) days' advance interest at the rate then in effect on the aggregate amount of all such prepayments paid including such twenty percent (20%) during such calendar month period. The privilege of paying amounts not in excess of said twenty percent (20%) of the original principal amount of the loan without consideration shall be non-cumulative if not exercised. The undersigned agrees that such one hundred eighty (180) days' advance interest shall be due and payable whether said prepayment is voluntary or involuntary, including any prepayment effected by the holder's exercise of the Acceleration Clause hereinafter set forth."

The note and deed of trust further provided the note holder could accelerate the due date of all unpaid amounts if a monthly installment was not paid. The accompanying deed of trust secured the monthly payments of principal and interest on the loan and "the performance of the covenants and agree-

ments of Borrower herein contained." Among the borrowers' covenants was: "Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, . . ." The deed of trust was made binding on "the respective successors and assigns of Lender and Borrower."

At a subsequent unspecified time, a second deed of trust against the same property was recorded to secure another loan made to the borrowers by plaintiff. Plaintiff was aware of defendant's prior lien but did not examine the loan documents or inquire about the prepayment terms.

On May 1, 1981, the borrowers missed a monthly installment payment due on the first note and deed of trust and made no later payments. Defendant accelerated the balance due and commenced foreclosure proceedings.

Defendant extended to plaintiff as a junior lienholder the option of reinstating the loan by bringing the note current or paying off the entire amount, including $14,500 as the prepayment fee. The plaintiff chose the second alternative, paying $267,565.26 to defendant in October 1982, including the $14,500. The prepayment fee portion was paid under protest, however, with plaintiff reserving the right to bring this lawsuit to obtain reimbursement of the prepayment fee.

The lawsuit was filed in October 1984. Defendant filed the summary judgment motion and after hearing held on May 28, 1985, the court granted the motion by order filed June 13, 1985.

III

*The Impact of Federal Law on the Liquidated Damages Argument*

Plaintiff contends the prepayment provision is an unlawful call for liquidated damages. We note at the outset defendant Fidelity Federal Savings and Loan Association is subject to federal regulation by the Federal Home Loan Bank Board pursuant to the Home Owners' Loan Act of 1933, 12 United States Code section 1461 et seq. (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 147 [73 L.Ed.2d 664, 671-672, 102 S.Ct. 3014].) The Bank Board's regulations have authorized imposition of prepayment charges or penalties. When defendant made the loan in May 1980, 12 Code of Federal Regulations section 545.6-12(b) provided: "Each borrower from Federal associations on a loan secured by a home or combination of home and business property shall have the right to prepay the loan without penalty unless the loan contract makes express provision for

a prepayment penalty. The prepayment penalty for a loan secured by a home which is occupied or to be occupied in whole or in part by a borrower shall not be more than 6 months' advance interest on that part of the aggregate amount of all prepayments made on such loan in any 12-month period which exceeds 20 percent of the original principal amount of the loan." (See *Meyers* v. *Beverly Hills Federal Savings and Loan Ass'n.* (9th Cir. 1974) 499 F.2d 1145, 1147; *Goldman* v. *First Federal Sav. & L. Ass'n. of Wilmette* (7th Cir. 1975) 518 F.2d 1247, 1248, fn. 1; *Toolan* v. *Trevose Federal Sav. & Loan Ass'n.* (1983) 501 Pa. 477 [462 A.2d 224, 226, fn. 8].)[1]

Plaintiff advances the argument that the prepayment penalty clause is invalid under Civil Code section 1671[2] because it imposes unreasonable liquidated damages.

The short answer to this contention is that section 1671 "does not apply in any case where another statute expressly applicable to the contract prescribes the rules or standard for determining the validity of a provision in the contract liquidating the damages for the breach of the contract." (§ 1671, subd. (a).) We interpret this provision to apply also where a federal regulation establishes the validity of a liquidated damages provision. The Law Revision Commission comment to section 1671 explains: "It should be noted that Section 1671(a) makes Section 1671 not applicable where the validity of the liquidated damages provision is governed by federal law or a regulation adopted pursuant thereto." The comment gives as an example a Federal Home Loan Bank Board regulation of late charges for home loans. (See Law Revision Com. com., West's Annot. Civ. Code, § 1671, pp. 497-498.)

---

[1]The current regulation of prepayment penalties is 12 Code of Federal Regulations section 545.35(c), which also authorizes such a penalty "as provided in the loan contract."

[2]Civil Code section 1671 provides: "(a) This section does not apply in any case where another statute expressly applicable to the contract prescribes the rules or standard for determining the validity of a provision in the contract liquidating the damages for the breach of the contract.

"(b) Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.

"(c) The validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either: [¶] (1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; or [¶] (2) A party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support.

"(d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

■■■■■■■■■
■■■■■■■■
■■■■■■■■■ ■■

■ Law Revision Commission comments are entitled to great weight in construing statutes proposed by the commission and adopted without substantial change. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].)

■ Even if section 1671 by its terms does not expressly exempt its application from contracts governed by federal regulations, the regulation of prepayment penalties by the Federal Home Loan Bank Board preempts any conflicting state limitations. (*Meyers, supra,* 499 F.2d 1145, 1147; *Toolan, supra,* 462 A.2d 224, 227; see *de la Cuesta, supra,* 458 U.S. 141, 167, fn. 20 [73 L.Ed.2d 664, 684].)

Finally, even assuming that on our facts, unlike in *Meyers* v. *Home Sav. & Loan Assn.* (1974) 38 Cal.App.3d 544, 546 [113 Cal.Rptr. 358], the statute might be applicable because the prepayment penalty is brought into play by a "breach of the contract," virtually identical prepayment provisions were found reasonable in *Lazzareschi Inv. Co.* v. *San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App.3d 303, 307-311 [99 Cal.Rptr. 417]. (Accord *Williams* v. *Fassler* (1980) 110 Cal.App.3d 7, 12 [167 Cal.Rptr. 545].)

Thus, section 1671 does not apply to a prepayment penalty provision authorized by the regulations of the Federal Home Loan Bank Board, but even if it did, the charge in our case is reasonable as a matter of law.

A. *Is It a Prepayment When the Lender Accelerates the Balance Due Upon the Borrower's Default?*

The central issues on appeal are whether the prepayment clause applies to this situation and whether it applies to the plaintiff. Plaintiff contends it is not a true prepayment when the balance of the loan is accelerated at the lender's option due to the borrower's default.

■ Except for those prepayment provisions required by statute for certain loans against realty (see Civ. Code, § 2954.9; Bus. & Prof. Code, § 10242.6; *Donahue* v. *LeVesque* (1985) 169 Cal.App.3d 620 [215 Cal.Rptr. 388]) a borrower has no right to prepay a loan, although one may bargain for this right. (See *Williams, supra,* 110 Cal.App.3d 7, 10-11.) The lender may agree to give the borrower an option to prepay, but may charge a premium or penalty for exercise of this option to compensate for the anticipated interest payments lost by prepayment. (See *Matter of LHD Realty Corp.* (7th Cir. 1984) 726 F.2d 327, 330.)

■ Plaintiff relies on a number of cases which hold that a lender cannot assess a prepayment penalty when the lender accelerates the balance of the payments due upon the borrower's default. (*Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 810-811 [189 Cal.Rptr. 775]; *Slevin Container Corp.* v. *Provident Fed. Sav.* (1981) 98 Ill.App.3d 646 [424 N.E.2d 939, 940-941]; *McCarthy* v. *Louisiana Timeshare Venture* (La.App. 4th Cir. 1982) 426 So.2d 1342, 1346; *American Fed. Sav.* v. *Mid-America Service* (S.D. 1983) 329 N.W.2d 124, 125-126; *Matter of LHD Realty Corp.*, *supra*, 726 F.2d 327, 330-331; see Annot. (1978) 86 A.L.R.3d 599.)[3] These cases reason that the prepayment clauses were intended to apply when the borrower voluntarily elected to prepay the obligation, and not when the lender elected to accelerate and require full payment. (*Ibid.*) Also it is no longer a prepayment to pay after the lender chooses to declare the entire debt due. (*Ibid.*)

As defendant points out, in none of these cases did the prepayment provision contain the language found in our case, specifying the penalty is due "whether said prepayment is voluntary or involuntary, including any prepayment effected by the holder's exercise of the Acceleration Clause." We have examined the prepayment provisions in each of these cases to the extent they are reflected in the opinions. Each is reasonably susceptible to the construction given by the courts that the prepayment clause applied only when the borrower exercised its option. For example, the terms of the note in *Tan, supra,* 140 Cal.App.3d 800, 802-803, footnote 1, spoke merely of the borrower reserving the privilege of prepayment. In contrast, the instant clause is intended to apply in the event the lender elects to accelerate and describes such a situation as an involuntary prepayment. Unlike *Tan,* there is no ambiguity which may be resolved against the lender who presumably drafted the note.

The parties to the note at issue unquestionably intended that the lender could impose a prepayment charge after accelerating the obligation upon the buyer's default. Thus, we find the clause applicable to the facts of the instant case.

## B. *Does the Prepayment Clause Apply to a Junior Lienholder?*

■ Plaintiff contends the prepayment clause does not apply to it but only to the borrower. Plaintiff emphasizes it was not a party to the note nor

---

[3]Plaintiff also cites *Casey* v. *Business Men's Assur. Co. of America* (5th Cir. 1983) 706 F.2d 559, but we regard the discussion in that case of the issue to be dictum based on uncertain facts.

even aware of it when it made its loan to the borrowers. The contention, however, is beside the point.

 Since foreclosure of a senior lien[4] will erase the security interest of a junior lien (*Streiff* v. *Darlington* (1937) 9 Cal.2d 42, 45 [68 P.2d 728]), at the threat of foreclosure a junior lienor is entitled, even without express contractual authority, to reinstate the loan by making a payment sufficient to cure the default (Civ. Code, § 2924c), or to pay off the senior lien and become subrogated to the rights of the senior lienholder as against the owner of the property. (Civ. Code, §§ 2876, 2903-2904; *Windt* v. *Covert* (1907) 152 Cal. 350, 352-354 [93 P. 67]; *Savings & L. Soc.* v. *Burnett* (1895) 106 Cal. 514, 536 [39 P. 922]; see *Stein* v. *Simpson* (1951) 37 Cal.2d 79, 83-84 [230 P.2d 816].) "One who has a lien inferior to another, upon the same property, has a right: [¶] 1. To redeem the property in the same manner as its owner might, from the superior lien; and, [¶] 2. To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby." (Civ. Code, § 2904.)

██ It is obvious even the owner of the property cannot redeem it from a lien without tendering the amount due under its terms, including the terms governing a default. (*Cassinella* v. *Allen* (1914) 168 Cal. 677, 680-681 [144 P. 746]; *Williams* v. *Gordon* (1928) 205 Cal. 590, 593 [271 P. 1070]; *Dunn* v. *Barry* (1917) 35 Cal.App. 325, 329-330 [169 P. 910].) While a lender may waive its contractual rights, no principle of law requires the lender to release the borrower from an arm's-length bargain they mutually made.

██ We find these principles dispositive. Without questioning plaintiff's asserted lack of actual knowledge, as a subsequent encumbrancer, plaintiff was on constructive notice of the existence of the prior recorded deed of trust and its terms. (Civ. Code, §§ 1107, 1213-1215, 2952; *Atkinson* v. *Foote* (1919) 44 Cal.App. 149, 163 [186 P. 831]; *Phelps* v. *American Mtg. Co.* (1936) 6 Cal.2d 604, 609 [59 P.2d 95]; cf. *Darrough* v. *Herbert Kraft Co. Bank* (1899) 125 Cal. 272, 276 [57 P. 983].) It also was on inquiry notice of the terms of the promissory note to which the deed referred. (Civ. Code, § 19; cf. *Gribble* v. *Mauerhan* (1961) 188 Cal.App.2d 221, 228 [10 Cal.Rptr. 296]; see *Dawes* v. *Tucker* (1918) 178 Cal. 46, 52-53 [171 P. 1068].) Thus, at the time of obtaining its own security interest in the property, plaintiff was constructively aware of the default provisions in the existing

---

[4]While for some purposes a deed of trust has not been regarded as creating a lien (cf. *Weber* v. *McCleverty* (1906) 149 Cal. 316, 319-323 [86 P. 706]), for purposes of establishing priorities between liens it generally is so regarded. (Civ. Code, § 2898; e.g., *Fickling* v. *Jackman* (1928) 203 Cal. 657, 661 [265 P. 810].)

note and deed of trust, including those set out above imposing a prepayment penalty if the unpaid balance was accelerated by the lender.

Plaintiff acquired from the borrower no better interest in the realty than the borrower had at the time. Plaintiff's interest was burdened by and subject to the terms of the existing deed of trust in favor of defendant. Though plaintiff was not personally bound by the senior note and lien,[5] its security undoubtedly was. (*Braun* v. *Crew* (1920) 183 Cal. 728, 731 [192 P. 531]; cf. *Foster* v. *Bowles* (1903) 138 Cal. 346, 350 [71 P. 494]; *Davidow* v. *Corporation of America* (1936) 16 Cal.App.2d 6, 12 [60 P.2d 132].) Obtaining a junior lien gave plaintiff the right to redeem the property from the senior lien, but not on better terms than bargained for by the borrower.

## V

The judgment is therefore affirmed.

Brauer, J., and Simmons, J.,* concurred.

---

[5]Defendant contends plaintiff was an assignee of the borrower under plaintiff's deed of trust, but plaintiff's deed of trust is not in evidence in the record.

*Assigned by the Chairperson of the Judicial Council.