[No. B026109. Second Dist., Div. Two. June 16, 1988.]

GOLDEN FOREST PROPERTIES, INC., Plaintiff and Appellant, v. COLUMBIA SAVINGS AND LOAN ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Leonard P. Baum and Norman A. Mathews for Plaintiff and Appellant.

Bidna & Keys, Howard M. Bidna and Harvey M. Moore for Defendants and Respondents.

OPINION

**FUKUTO, J.—**

*Introduction*

Plaintiff, Golden Forest Properties, Inc. (Golden), appeals from the judgment entered in favor of defendants, Columbia Savings and Loan Association and Columbia Financial Corporation (collectively, Columbia) following a court trial determined upon stipulated facts. We are asked to interpret the prepayment charge clauses of a first promissory note and first deed of trust held by Columbia to determine whether Columbia was entitled to retain prepayment charges where the prepayment of a secured home loan resulted from acceleration upon the default of the borrower and subsequent trustee sale.

*The Facts*

The material facts are undisputed. On June 15, 1981, Angelo and Drucilla Typaldos borrowed $405,500 from Columbia. The promissory note in the principal sum of $405,500 was secured by a first deed of trust on certain residential real property in Rolling Hills, California. The first trust deed was recorded in the office of the Los Angeles County Recorder on June 19, 1981.

The first promissory note provided for payment of monthly installments of $5,738.34, interest of 17 percent on the unpaid balance of the loan, and a balloon payment upon a specified maturation date. It reserved to the borrowers a right of prepayment computed in a manner consistent with the provisions of Civil Code section 2954.9, which creates a limited right to prepay obligations secured by owner-occupied residential real property of four units or less.[1] The first note and first deed of trust contained provisions imposing the prepayment charge even if prepayment was involuntary and resulted from Columbia's acceleration of the debt in the event of the borrowers' nonperformance of any of the terms of the note and trust deed.[2]

On June 15, 1981, the Typaldos borrowed an additional $57,500 from David and Donna Gauvreau. A note in the principal amount of $57,500 was secured by a second trust deed on the Rolling Hills property, which was recorded in the office of the Los Angeles County Recorder on June 19, 1981.

On September 2, 1983, the Typaldos defaulted in their payments on the Columbia loan. On September 7, 1983, Columbia recorded in the office of the Los Angeles County Recorder a written notice of default, declaring an amount of $27,181.95 to be due and owing as of September 2, 1983.

---

[1] In 1983, Civil Code section 2954.9 provided, in relevant part: "(a)(1) Except as otherwise provided by statute, where the original principal obligation is a loan for residential property of four units or less, the borrower under any note or evidence of indebtedness secured by a deed of trust or mortgage or any other lien on real property shall be entitled to prepay the whole or any part of the balance due, together with accrued interest, at any time. [¶] (2) Nothing in this subdivision shall prevent a borrower from obligating himself, by an agreement in writing, to pay a prepayment charge. . . . (b) Except as otherwise provided in Section 10242.6 of the Business and Professions Code, the principal and accrued interest on any loan secured by a mortgage or deed of trust on owner-occupied residential real property containing only four units or less may be prepaid in whole or in part at any time but only a prepayment made within five years of the date of execution of such mortgage or deed of trust may be subject to a prepayment charge and then solely as herein set forth. An amount not exceeding 20 percent of the original principal amount may be prepaid in any 12-month period without penalty. A prepayment charge may be imposed on any amount prepaid in any 12-month period in excess of 20 percent of the original principal amount of the loan which charge shall not exceed an amount equal to the payment of six months' advance interest on the amount prepaid in excess of 20 percent of the original principal amount."

Paragraph 3 of the first note reserved to the borrowers the following right of repayment: "RIGHT TO PREPAY. I have the right to prepay principal (a) without prepayment charge: once in any calendar year in an amount not exceeding 20% of the original principal, and/or at any time on or after February 1, 1986; and (b) with a prepayment charge equal to six months interest (at the interest rate then in effect) on any principal I otherwise prepay, whether such prepayment is voluntary or involuntary (even if it results from [Columbia Savings and Loan] Association's exercise of its rights under Paragraph 1, above), and in addition to any other sums I have to pay under this Note."

[2] The precise language of the prepayment charge provisions is more fully set forth later in this opinion.

On October 20, 1983, Golden purchased the second note and second trust deed from the Gauvreaus. The assignment of the second trust deed to Golden was recorded in the office of the Los Angeles County Recorder on November 3, 1983.[3]

The Typaldos remained in default on Columbia's loan and on December 15, 1983, Columbia gave written notice of trustee's sale of the Rolling Hills property. The notice of trustee's sale stated that an unpaid balance of $391,161.81 was due on the first note plus "estimated costs, expenses, and advances" in the sum of $27,035.08. While not so reflected on the face of the notice of trustee's sale, the latter amount included a prepayment charge of $22,795.08, computed in accordance with the prepayment provision of the first note.

On December 19, 1983, Golden's attorney was directly informed by Columbia's trustee sale officer of Columbia's intention to include a prepayment charge in the amounts sought at the trustee's sale. Through counsel, Golden objected to the inclusion of prepayment charges by letters dated December 20 and 27, 1983. Efforts to convince the trustee sale officer that Columbia was not legally entitled to prepayment charges were, however, fruitless.

A trustee's sale of the Rolling Hills property was held on January 6, 1984. Columbia made a first bid of $418,252.95, which included a prepayment charge of $22,795.08. Under protest, Golden successfully bid $419,000 for the property, an amount which also included Columbia's prepayment charge.

After the trustee's sale, there remained an unpaid balance in excess of $22,795.08 on Golden's second note.

All parties agree that Golden was never a party to the first trust deed or first note, and never assumed any obligation to Columbia under either instrument.

*Argument*

 Golden contends that the first note and first trust deed did not entitle Columbia to prepayment charges where, as here, the borrowers did not exercise their contractual right of prepayment, the junior lienholder

---

[3] According to the stipulated facts, Golden is a California corporation which is in the business of buying notes and deeds of trust for profit. Golden is "sophisticated and knowledgeable" regarding secured real estate transactions.

(Golden) did not exercise its statutory right of redemption, and the property was sold at trustee's sale to the junior lienholder. Alternatively, Golden asserts that the provisions of the first note and first trust deed are ambiguous with respect to Columbia's entitlement to prepayment charges under such circumstances, and any ambiguity must be resolved against Columbia as the drafter/payee. (*Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 810 [189 Cal.Rptr. 775].) We disagree with both contentions.

To determine whether, under the terms of the first note and first trust deed, the prepayment obligation was triggered by the borrowers' default, followed by Columbia's exercise of its rights under the acceleration and trustee's sale clauses of the loan instruments, we look to the express language of the first note and first deed of trust. Pursuant to paragraph 3 of the first note, the borrowers agreed to pay the specified prepayment charge "on any principal I otherwise prepay, whether such prepayment is voluntary or involuntary (even if it results from Association's exercise of its rights under Paragraph 1, above), and in addition to any other sums I have to pay under this Note."

Paragraph 1 of the first note is a standard acceleration clause which provides that, if the borrowers fail to pay any installment when due, or fail to perform, when due, any obligation, covenant, or agreement under the note or deed of trust, then all principal and accrued interest will become immediately due at Columbia's option.

Paragraph 18 of the first deed of trust, entitled "Prepayment Charge," obligates the borrowers, in the event the deed of trust or note secured thereby provides any prepayment fee for secured indebtedness, "to pay said fee if any of said indebtedness shall be paid prior to the due date thereof stated in said Note or this Deed of Trust, even if and notwithstanding Trustor shall have defaulted in payment, or in performance of any agreement hereunder, and Beneficiary, by reason thereof, shall have declared all sums secured hereby immediately due and payable."

In *Pacific Trust Co. TTEE* v. *Fidelity Fed. Sav. & Loan Assn.* (1986) 184 Cal.App.3d 817 [229 Cal.Rptr. 269], the junior lienholder exercised its statutory right to pay off the senior trust deed when the borrower defaulted, causing the first trust deed holder to accelerate the debt. The note provided for a prepayment charge " 'whether said prepayment is voluntary or involuntary, including any prepayment effected by the holder's exercise of the Acceleration Clause hereinafter set forth.' " (*Id*. at p. 820.) The junior lienholder paid the prepayment charge under protest, then sued for reimburse-

ment. The appellate court found that "[t]he parties to the note at issue unquestionably intended that the lender could impose a prepayment charge after accelerating the obligation upon the buyer's default." (*Id.* at p. 824.)

The prepayment charge provisions of the first note and first deed of trust are nearly identical to the prepayment provision interpreted by the appellate court in the *Pacific Trust* case. Here, too, the borrowers defaulted in payment and Columbia declared all sums secured by the first trust deed immediately due and payable. As a direct consequence of Columbia's exercise of rights under the acceleration clause, a trustee's sale was held and the borrowers' indebtedness *was* paid prior to the undisputed loan maturity date of July 1, 1986. The intent underlying the loan instruments was clearly to permit imposition of a prepayment charge under such circumstances. Moreover, we find untenable the suggestion that the parties to the first note intended that Columbia be entitled to a prepayment charge upon prepayment resulting from acceleration of the obligation following the borrowers' default so long as the borrowers or the junior lienholder exercised the statutory right to pay off the senior trust deed, but *not* if it became necessary to dispose of the property by trustee's sale to satisfy the borrowers' delinquent obligation.

As the subordinate lienholder, Golden had the option, prior to the trustee's sale, to "pay off the senior lien and become subrogated to the rights of the senior lienholder as against the owner of the property." (*Pacific Trust Co. TTEE v. Fidelity Fed. Sav. & Loan Assn., supra,* 184 Cal.App.3d at p. 825; see also Civ. Code, §§ 2876, 2903, 2904.) Presumably cognizant of the Court of Appeal's holding in *Pacific Trust Co. TTEE v. Fidelity Fed. Sav. & Loan Assn., supra,* Golden concedes that had that option been exercised, a "prepayment" of the loan would have occurred entitling Columbia to prepayment charges under the terms of the first note and first trust deed. (*Id.* at pp. 825-826.)

Golden asks that we disregard the *Pacific Trust* case as distinguishable from the case at bench. It is argued that, when a junior lienholder exercises the statutory right to pay off a foreclosing senior lienholder, as occurred in the *Pacific Trust* case, the junior lienholder effectively exercises the right of the borrowers to make a "prepayment" under paragraph 3 of the first note. When the trust property is purchased by the junior lienholder at the trustee's sale, as occurred here, it is asserted that a different result is compelled because, in the latter case, the purchaser exercises none of the rights conferred by reason of its status as junior lienholder. Ergo, the proceeds from the sale do not amount to a "prepayment" by the borrowers or their

successor in interest. Golden's attempt to distinguish the *Pacific Trust* case is unavailing, however.

Implicit in Golden's argument is the assumption that only prepayment *by the borrrower or a successor in interest triggers Columbia's right to a prepayment charge.* We find no such limitation in the language of the first note and first trust deed. These instruments make it abundantly clear that one who in good faith acquires the trust property at trustee's sale does so *subject* to the borrower's secured obligation to pay the prepayment charge.

Paragraph 24 of the first deed of trust explicitly sets forth the manner in which a trustee may apply the proceeds of a trustee's sale against the secured obligations of the borrower. The trustee is authorized to deduct "cost, fees, and expenses" of the trustee and trust property, then apply the proceeds of sale to the amounts loaned, but not prepaid, together with accrued interest payable under the note. The trustee may next apply the proceeds to "all other sums secured [by the Deed of Trust]." Only "if thereafter there be any proceeds remaining, shall [the Trustee] distribute them to the person or persons legally entitled thereto."

Paragraph 18 of the first trust deed provides for a prepayment charge "*if any of said indebtedness shall be paid prior to the due date thereof stated in said Note or this Deed of Trust, . . .*" (Italics added.) The language of this provision does not limit application of the prepayment charge to prepayments by the borrowers or their successors in interest.

Paragraph 1 of the first trust deed states that the trust is created, among other purposes, to secure "Performance of each agreement of Trustor contained [in the Deed of Trust] or incorporated [therein] by reference or contained in any papers executed by Trustor relating to the loans secured [thereby]." Both the first note and first trust deed contain provisions obligating the borrower to pay a prepayment charge under the conditions previously discussed. These conditions having been met, the prepayment charge, computed in accordance with the terms of the first note, was an obligation secured by the first trust deed to which Golden's right to share in the proceeds of the trustee's sale was clearly subordinate.

Golden's reliance upon dicta in *Tan v. California Fed. Sav. & Loan Assn., supra,* 140 Cal.App.3d 800 is misplaced. That case held that a lender could not assess a prepayment charge following a lender's acceleration of the balance of a loan upon the borrower's default, where the "prepayment privilege" provision of the note did *not* contain language making the prepayment charge payable even if prepayment was involuntary and resulted

from the lender's exercise of rights under an acceleration clause. (See, *Pacific Trust Co. TTEE* v. *Fidelity Fed. Sav. & Loan Assn., supra,* 184 Cal.App.3d at p. 824.)

Neither the Typaldos nor Golden had a right to redeem the trust property prior to foreclosure without tendering the full amount due under the terms of the first note and first deed of trust, including any prepayment charge. (*Pacific Trust Co. TTEE* v. *Fidelity Fed. Sav. & Loan Assn., supra,* 184 Cal.App.3d at pp. 824-826.) We see no reason why Columbia should be deprived of the benefit of its bargain merely because the junior lienholder's informed tactical election to forgo its right to redemption in favor of foreclosure yielded disappointing results.[4]

Both parties agree that the prevailing party is entitled to attorneys fees and costs on appeal. (Civ. Code, § 1717; Cal. Rules of Court, rule 26.) Respondent is the prevailing party.

Accordingly, the judgment is affirmed and the matter is remanded to the trial court with directions to determine a reasonable attorney's fee for services performed on appeal, plus costs, and add such fees and costs to the principal amount of the judgment.

Compton, Acting P. J., and Gates, J., concurred.

---

[4] Our affirmance of the lower court's decision makes it unnecessary to address the parties' remaining contentions.