**In re SCHRIOCK CONSTRUCTION, INC., Debtor.**

**Bankruptcy No. 93–30366.**

United States Bankruptcy Court, D. North Dakota.

Dec. 16, 1994.

See also, 167 B.R. 569.

Ross Espeseth, Bismarck, ND, for debtor.

Wayne Drewes, Trustee, Fargo, ND.

Richard P. Olson, Minot, ND, for First Western Bank.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court arises by application of First Western Bank & Trust (Bank) filed on September 2, 1994, for the reimbursement of attorney's fees and legal expenses incurred in this case pursuant to 11 U.S.C. § 506(b). As an oversecured creditor in this Chapter 7 proceeding,[1] the Bank seeks to enhance its secured claim and recover from the proceeds of the sale of its collateral attorney's fees and expenses in the amount of $38,052.63. The Trustee, Wayne Drewes (Trustee), objects to the Bank's application contending that North Dakota Century Code § 28–26–04 renders the provisions in the loan agreements and their ilk for attorney's fees in this case void *ab initio* and without effect. Accordingly, it is argued, that since a requisite statutory element is absent, there is, as a matter of law, no agreement upon which a claim for attorney's fees and concomitant costs under § 506(b) can be based. The Trustee further objects to the Bank's claim for attorney's fees and costs on the grounds that the fees incurred were not reasonable in light of the facts and circumstances of the case and the Bank's exceedingly oversecured status. The Bank retorts by arguing that the state statute in question is, by its own terms, inapplicable in the context of bankruptcy. Alternatively, the Bank asserts that federal law, rather than state law, governs an oversecured creditor's entitlement to attorney's fees under § 506(b). The Bank further contends that fees incurred were indeed reasonable in light of the history and complexity of this case.

The seminal issue in this case turns on whether federal law or state law governs an oversecured creditor's right to attorney's fees under 11 U.S.C. § 506(b). The task of

1. As of June 17, 1994, the amount owed to the Bank on account of its secured claim was $441,-602.26. The gross amount realized by the Trustee in this case from the sale of the collateral securing the Bank's claim was approximately $1,080,175.

determining which law governs the validity or enforceability of contractual provisions relating to attorney's fees and similar charges in a bankruptcy proceeding begins where all such inquiries must: with the language of the applicable statute itself. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Where the language of a statute is plain and relatively clear, a court's sole function is to enforce it according to its own terms. *Id.* It is only in the rare case, where the literal application of a statute produces a result which is demonstrably at odds with the intention of the drafters, that the plain meaning of legislation is not regarded as conclusive. *Id.* at 242, 109 S.Ct. at 1030–31.

■ Section 506 governs the definition and treatment of secured claims in bankruptcy. Subsection (b) is the provision which is concerned specifically with oversecured claims and allows a holder of an oversecured claim to enhance its claim with interest as well as recover, in addition to the prepetition amount of the claim, attorney's fees *as long as* the underlying agreement upon which the claim is based provides for such fees:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, *there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b) (emphasis added). A plain reading of the express language of the statutory text necessitates the conclusion that a distinction must be drawn between an oversecured creditor's entitlement to interest on its claim and other charges such as attorney's fees. While an oversecured creditor is entitled to interest "as a matter of course", *In re Foertsch,* 167 B.R. 555, 560 (Bankr. D.N.D.1994), "regardless of whether the agreement giving rise to the claim provides for interest," *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993), the right to attorney's fees is wholly dependent or contingent upon the existence of a contractual agreement permitting their recovery:

> The natural reading of [§ 506(b)] entitles the holder of an oversecured claim to post-petition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to [those] reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.
>
> This reading is also mandated by the grammatical structure of the statute. The phrase "interest on such claim" is set aside by commas, and separated from the reference to fees, costs, and charges by the conjunctive words "and any." As a result, the phrase "interest on such claim" stands independent of the language that follows. "[I]nterest on such claim" is not part of the list made up of "fees, costs, or charges," nor is it joined to the following clause so that the final "provided for under the agreement" modifies it as well. The language and punctuation Congress used cannot be read in any other way. By the plain language of the statute, the two types of recovery are distinct.

*United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989) (citation & footnotes omitted). Unlike interest, an oversecured creditor's right to attorney's fees under § 506(b) is expressly qualified. Since a plain reading of § 506(b) requires attorney's fees to be provided for under the "agreement" which gives rise to the claim in order to be recoverable, it necessarily follows that the enforceability and validity of contractual provisions relating to attorney's fees must be conditioned upon the law which governs the agreement between the contracting parties— generally, state law. Any other interpretation would in effect render the plain language in § 506(b), which draws a clear distinction between an oversecured creditor's right to the recovery of postpetition interest and its

right to the recovery of "fees, costs, or charges," superfluous.

Congress, mindful of the fact that well established, pre-Code precedent dictated that the validity and construction of attorney fee provisions in security instruments in bankruptcy be determined in accordance with state law, *see Security Mortgage Co. v. Powers (In re Florida Furniture)*, 278 U.S. 149, 153–54, 49 S.Ct. 84, 85, 73 L.Ed. 236 (1928); *see also Mills v. East Side Investors (In re East Side Investors)*, 694 F.2d 242, 245 (11th Cir.1982); *Worthen Bank & Trust Co. v. Morris (In re Morris)*, 602 F.2d 826, 828 (8th Cir.1979), could have very easily expressed its intention to preempt state law by drafting § 506(b) in a fashion which makes no distinction between an oversecured creditor's entitlement to interest and attorney's fees: *i.e.* "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim interest and any reasonable fees, costs, or charges on such claim." *Cf. Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1085 (8th Cir.1988) (noting that the Bankruptcy Code generally distinguishes between contractual obligations and rights arising from operation of statute). Indeed, there is evidence in *both* the House and Senate Reports that Congress, when promulgating § 506(b), in fact intended to continue pre-Code practice: "Subsection (b) *codifies current law* by entitling a creditor with an oversecured claim to any reasonable fees (including attorney's fees) ... provided under the agreement under which the claim arose." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356–57, S.Rep. No. 989, 95th Cong., 1st Sess. 68 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6312–13, 5787, 5854 (emphasis added).

 Section 506(b) cannot be read in isolation, but rather must be read in conjunction with the rest of the Bankruptcy Code. As a general rule, the Code requires the validity of claims against the bankruptcy estate to be determined in accordance with non-bankruptcy law since interests in property are both created and defined by state law. *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). *See also Chiu v. Wong*, 16 F.3d 306, 309 (8th Cir.1994) ("State law governs the resolution of property rights within a bankruptcy proceeding."). The award of attorney's fees under a private agreement in a bankruptcy proceeding is simply a question of the nature and extent of property rights, a matter generally to be determined in accordance with state rather than federal law. Section 101(5) defines a "claim" as a "right to payment" and, upon objection, requires a bankruptcy court to disallow any claim to the extent that it is unenforceable "under any agreement or applicable law". 11 U.S.C. §§ 101(5), 502(b)(1). Consequently, absent an identifiable federal interest which compels a different result, there is no sound reason why property interests should be analyzed or treated differently simply because of the advent of bankruptcy. *Butner*, 440 U.S. at 55, 99 S.Ct. at 918. "Uniform treatment of property interests by both state federal courts within a state serve to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.*

It cannot be seriously argued that § 506(b) expressly overrides Code §§ 101(5) and 502(b)(1) and thereby the general rule that the validity of a claim in bankruptcy is determined in accordance with state law. Nor can § 506(b) be interpreted as implicitly overriding those two sections or the general rule codified therein since "[e]xceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' or consequences obviously at variance with the policy of the enactment as a whole." *Ferrari v. Barclays American/Business Credit, Inc. (In re Morse Tool, Inc.)*, 87 B.R. 745, 748 (Bankr.D.Mass.1988) (quoting *United States v. Rutherford*, 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979)). It does not create an absurd result to read § 506(b) literally, as merely supplementing the general rule set forth in §§ 101(5) and 502(b)(1). *Id.* The result would be that an oversecured creditor can recover those agreed upon "fees,

costs, or charges" within the purview of § 506(b) *only if* valid and enforceable under law of the state which governs the agreement between the contracting parties.

The rationale for the allowance of attorney's fees under § 506(b) rests upon the notion that where a debtor and creditor have contractually agreed to be bound by the provisions in a security agreement providing for the recovery of attorney's fees in the event of default, an adequately secured creditor in bankruptcy is entitled to the benefit of that bargain since only those assets encumbered by the creditor's lien will be used to fund the payment of those fees. Thus, the efficacy of credit arrangements and the parties' expectations are safeguarded in circumstances where an oversecured creditor's security interest arises from a voluntarily executed agreement whereby the parties have specifically bargained for the payment of attorney's fees. Where state law unequivocally precludes a secured creditor from contracting for and recovering, in addition to the principal amount of its claim and accrued interest, attorney's fees upon a default, that creditor should certainly not be allowed to enhance its secured claim with a recovery of them in the context of a bankruptcy proceeding under § 506(b). Section 506(b)'s reference to the parties' "agreement" would be devoid of any meaning or effect if "boiler-plate" provisions in loan documents which could not be agreed to or contracted for in the first instance under state law, could, as a matter of federal law, be afforded an oversecured creditor as a matter of right in bankruptcy. Simply put, if an attorney fee provision is not valid and enforceable by an oversecured creditor outside of the bankruptcy context, it does not become enforceable merely as a consequence of being asserted in the context of a bankruptcy case.

■ This court is, however, mindful of the fact that a number of commentators and a clear majority of courts which have considered the issue have concluded otherwise and held that reasonable attorney's fees and costs agreed to by the contracting parties should be allowed an oversecured creditor under § 506(b) *notwithstanding the express dictates of contrary state law.* *See Blackburn–Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.),* 794 F.2d 1051, 1056–58 (5th Cir.1986); *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.),* 789 F.2d 674, 675–77 (9th Cir.1986); *Unsecured Creditors' Comm. v. Walter E. Heller & Co. Southeast, Inc. (In re K.H. Stephenson Supply Co.),* 768 F.2d 580, 582–85 (4th Cir.1985); *Longwell v. Banco Mortgage Co.,* 38 B.R. 709, 711 (D.C.1984) (opining that a bankruptcy court need not look to state law when assessing an oversecured creditor's entitlement to attorney's fees under § 506(b)); *In re Vanvleet,* No. 92–40461–12, 1994 WL 631112 *2 (Bankr.D.Kan.1994); *In re Harper,* 146 B.R. 438, 443–47 (Bankr.E.D.Mo.1992); *Financial Ctr. Assocs. v. TNE Funding Corp. (In re Fin. Ctr. Assocs.),* 140 B.R. 829, 839 (Bankr.E.D.N.Y.1992); *In re Saunders,* 130 B.R. 208, 213–14 (Bankr.W.D.Va.1991); *In re Korangy,* 106 B.R. 82, 85 (Bankr.D.Md.1989); *In re Wonder Corp.,* 72 B.R. 580, 588 (Bankr.D.Conn.1987); *Johnson–Allen v. Lomas & Nettleton Co. (In re Johnson–Allen),* 67 B.R. 968, 975 (Bankr.E.D.Pa.1986); *In re Kehn Ranch, Inc.,* 41 B.R. 832, 832–33 (Bankr.D.S.D.1984); *Schlecht v. State (In re Schlecht);* 36 B.R. 236, 238–40 (Bankr.D.Alaska 1983). *See also* 3 *Collier on Bankruptcy* ¶ 506.05, 506–48–51 (15th ed. 1994); R. Wilson Freyermuth, Note, *Preemption of State Law Notice Provisions Governing the Recovery of Attorneys' Fees by Section 506(b) of the Bankruptcy Code,* 1986 Duke L.J. 176. *But see In re 433 South Beverly Drive,* 117 B.R. 563, 568 (Bankr.C.D.Cal.1990); *Ferrari v. Barclays American/Business Credit, Inc. (In re Morse Tool, Inc.),* 87 B.R. 745, 747–50 (Bankr.D.Mass.1988); *In re Dawson,* 32 B.R. 179, 180 (Bankr.W.D.Mo.1983); *LHD Realty Corp. v. National Life Ins. Co.,* 20 B.R. 722, 725 (Bankr.S.D.Ind.1982); *Mellon Bank, N.A. v. Sholos (In re Sholos),* 11 B.R. 782, 784–85 (Bankr.W.D.Pa.1981); *In re Cipriano,* 8 B.R. 697, 698 (Bankr.D.R.I.1981). *Accord* David G. Carlson, *Oversecured Creditors Under Bankruptcy Code Section 506(b): The Limits of Postpetition Interest, Attorneys' Fees, & Collection Expenses,* 7 Bankr. Dev.J. 381, 408 (1990) (noting that if a contract provides for the collection of attorney's

fees, the contract must be both valid and enforceable under state law). Most of the decisions considering the issue of whether state or federal law governs the enforceability of attorney's fee provisions were confronted with a state law "notice" requirement which would defeat an otherwise valid attorney's fee provision, rather than a state statute, such as in the case at bar, which renders such provisions in loan documents and security instruments completely void for public policy reasons. All of those decisions which follow the majority view and effectively hold that state law is utterly irrelevant to the issue of the enforceability of attorney's fees as part of an oversecured creditor's claim under § 506(b), create a non-existent ambiguity in the statutory text and scheme in order to resort to an analysis of unconvincing and less than conclusive legislative history. Although this court will not recount the entire legislative history on which these authorities rely, the focal impetus for their conclusion that the drafters of the Code intended to preempt state law and abrogate pre-existing precedent in this area appears to be premised almost exclusively upon final hour remarks of the floor managers of the Bankruptcy Reform Act of 1978, in which § 506(b) was enacted. *See generally Ferrari v. Barclays American/Business Credit, Inc. (In re Morse Tool, Inc.)*, 87 B.R. 745, 748–49 (Bankr.D.Mass.1988) (setting forth the comments of Representative Edwards and Senator De Concini indicating that, " '[i]f the security agreement between the parties provides for attorney's fees, it will be enforceable under Title 11 *notwithstanding contrary law.*' 124 Cong.Rec. H11095 (daily ed. September 28, 1978) (emphasis added); see also 124 Cong.Rec. S17411 (daily ed. October 6, 1978)."). The remarks of *two* Congressional members have dictated the interpretation of § 506(b) that the aforementioned courts and commentators rely upon in order to justify the abrogation of well established pre-Code precedent, despite the unassailable fact that the language of the reports which eventually emerged from *both* the House and Senate chambers unmistakably expressed the sentiment of Congress that § 506(b) was intended to preserve the status quo and not supplant state law with respect to the enforceability of attorney's fees. Although floor statements by members of Congress can be used to confirm apparent meaning, *Department of Revenue v. ACF Indus., Inc.,* —— U.S. ——, ——, 114 S.Ct. 843, 851, 127 L.Ed.2d 165 (1994), they should not be used to trump a textual plain meaning or be regarded as conclusive if they are either imprecise or contradictory of the final embodiment of legislative history which is generally the committee reports themselves. *See Director, Office of Workers' Compensation Programs v. Greenwich Collieries,* —— U.S. ——, —— - ——, 114 S.Ct. 2251, 2258–59, 129 L.Ed.2d 221 (1994); *Dewsnup v. Timm,* 502 U.S. 410, 419–20, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

■ In ruling that attorney's fees are not a part of an oversecured creditor's claim under § 506(b) in the absence of a contractual agreement which is valid and enforceable under state law, the court must turn to an analysis of the parties' agreement in this case and the manner in which that agreement would be construed under North Dakota state law. Paragraph 3(d)(x) of the security agreement executed by the parties on May 7, 1987, provides that the borrower agrees to reimburse the lender for all costs of collection including reasonable attorney's fees "incurred in connection with the ... protection, defense or enforcement of the security interest ... or [the] [a]greement ..., including expenses incurred in any litigation or bankruptcy or insolvency proceedings...." The security agreement defines a "default" as the filing of a petition in bankruptcy.[2] Another loan document expressly provides that "[t]he law of the state in which you are located will govern this note. Any term which is contrary to applicable law will not be effective...."[3] In other words, the parties

---

2. Paragraph 7 of an April 29, 1991, note executed by the parties also defines a "default" as the filing of a petition in bankruptcy. The note further provides that if the lender must hire an attorney to collect the note, the borrower is required to pay the attorney's fees and costs incurred *"except where prohibited by law".*

3. Paragraph 10 of the security agreement additionally provides that: "This Agreement shall be

agreed at the loan's inception that the agreement will be governed by the laws of the state of North Dakota (not federal law) and if any term or provision in the agreement is unlawful in any respect, that term or provision will not be enforceable or given effect between the contracting parties. Consequently, the clear letter and spirit of the agreement giving rise to the Bank's claim makes the *right* to attorney's fees wholly contingent upon their allowability under state law.

■■■ Section 28–26–04 of the North Dakota Century Code, a statutory provision governing a creditor's right to recover attorney's fees in North Dakota, provides:

**Attorney's fee in instrument void.** Any provision contained in any note, bond, mortgage, security agreement, or other evidence of debt for the payment of an attorney's fee in case of default in payment or in proceedings had to collect such note, bond, or evidence of debt, or to foreclose such mortgage or security agreement, *is against public policy and void.*

N.D.Cent.Code § 28–26–04 (1991) (emphasis added). *Cf.* N.D.Cent.Code § 41–09–50 (U.C.C. § 9–504) (Supp.1993) (conditioning a secured creditor's right to recover reasonable attorney's fees from the proceeds of the sale of foreclosed collateral "to the extent provided for in the agreement and not prohibited by law"). Section 28–26–04 is not a recently enacted provision but, rather, has been part and parcel of North Dakota's statutory scheme since statehood. *See generally* 1889 N.D.Laws ch. 16 § 1. The North Dakota Legislature has loudly and clearly declared that terms in financial instruments providing for the payment of attorney's fees in case of default are contrary to public policy and *"void"*. *See generally* Black's Law Dictionary 1573 (6th ed. 1990) (defining the term "void" to mean: "Null; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended."). Moreover, the North Dakota Supreme Court has held that

§ 28–26–04 operates to invalidate any provision for the payment of attorney's fees contained in lending agreements. *See Production Credit Ass'n v. Obrigewitch,* 462 N.W.2d 115, 118 (N.D.1990); *Commercial Bank v. Stewart,* 429 N.W.2d 402, 403 (N.D.1988); *Farmers Union Oil Co. v. Maixner,* 376 N.W.2d 43, 48–49 (N.D.1985); *Continental Supply Co. v. Syndicate Trust Co.,* 52 N.D. 209, 202 N.W. 404, 409 (1925). This court cannot agree with the Bank's unduly narrow interpretation of § 28–26–04 or its argument that the statute is, by its own terms, inapplicable in the context of bankruptcy especially where the express terms of the governing instruments make the agreement to pay attorney's fees in the event of default, clearly defined in the loan documents as the event of bankruptcy, contingent upon state law. It is a rudimentary principle of contract law that essential to the existence of a contract is a lawful object. N.D.Cent.Code § 9–01–02 (1987). Parties cannot make a binding contract for that which is in violation of law or void for public policy. *Id.* § 9–01–14; E. Allan Farnsworth, *Contracts* § 5.1, at 345–46 n. 2 (2d ed. 1990). Since the attorney's fee provisions in the instant case were wholly contingent upon state law which rendered them void *ab initio,* there was no "agreement" from which a duty to pay reasonable attorney's fees could spring from in the first instance. Bankruptcy Code § 506(b), which allows the holder of an oversecured claim to recover as part of its claim reasonable fees, costs, or charges *"provided for under the agreement,"* simply does not create a right to attorney's fees for which the parties never, and could never, agree. The plain language of § 506(b) mandates that any right to attorney's fees must be claimed pursuant to a contractual "agreement."

■■■ Although the court finds it unnecessary to resolve the issue of the "reasonableness" of the attorney's fees as prayed for in the application in the context of this order, it should be noted that an oversecured credi-

governed by the laws of the state in which it is executed [(North Dakota)]. If any provision or application of this Agreement is held unlawful or unenforceable in any respect, such illegality or unenforceability shall not affect other provisions

or applications which can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provision or application had never been contained herein or prescribed hereby."

tor is entitled to recover under § 506(b) only those fees which were reasonably necessary at the time to protect its interests. It is inherently unreasonable for an oversecured creditor to be reimbursed for those attorney's fees incurred that are not cost-justified either by the economics of the situation or necessary to preserve the creditor's interest in light of the circumstances of the case or the legal issues involved. Although the court is vested with the benefit of hindsight, it cannot help but view portions of the Bank's fee application with a certain amount of circumspection in light of the fact that its greatly oversecured status made the risk of non-payment under any scenario minimal.

Accordingly, and for reasons stated, the application of First Western Bank & Trust for attorney's fees and costs under 11 U.S.C. § 506(b) is in all things **DENIED.**

**SO ORDERED.**