Filed 10/12/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| JACQUELINE GRACE GORMLEY et al., | C093201 |
| Plaintiffs and Respondents, | (Super. Ct. Nos. SCV0032242, SCV0032348, SCV0032349, SCV0032518, SCV0032519, SCV0032550, SCV0032762, SCV0032910, SCV0032990, SCV0032991, SCV0032992, SCV0032993, SCV0032995, SCV0032996, SCV0032997, SCV0032998, SCV0032999, SCV0033003, SCV0033022, SCV0033235) |
| v. | |
| EFRAIN DIEGO GONZALEZ et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Placer County, Charles Wachob, Judge. Affirmed.

The Bankruptcy Group, Stephan M. Brown and Daniel J. Griffin for Defendants and Appellants.

Wilcoxen Callaham and Michelle C. Jenni for Plaintiffs and Respondents.

1

This appeal involves the application of Civil Code section 1671, subdivision (b),[1] which provides, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." The parties to this appeal are (1) plaintiffs in 20 separate medical malpractice lawsuits filed against two doctors and a medical spa (collectively referred to as "Plaintiffs"), and (2) defendants in those lawsuits (i.e., the two doctors and the medical spa, collectively referred to as "Defendants").[2] Plaintiffs and Defendants resolved the underlying lawsuits by entering into a global settlement agreement pursuant to which Defendants agreed to pay Plaintiffs $575,000 in two installments. If the installments were not paid on time, liquidated damages would be assessed at the rate of $50,000 per month and $1,644 per day, up to a cap of $1.5 million. When Defendants failed to pay either installment, Plaintiffs filed a motion to enforce the settlement agreement, including the liquidated damages provision. Defendants opposed the motion, arguing the liquidated damages provision was unreasonable and thus invalid pursuant to section 1671. The trial court found Defendants failed to establish the provision was unreasonable under the circumstances, and it entered judgment against Defendants in the amount of $1,393,084 (the settlement amount of $575,000 plus $818,084 in liquidated damages). Defendants appeal, and we now affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We have been provided with little information about the underlying lawsuits.[3] We know there are 20 separate lawsuits; we know Plaintiffs are former patients of

---

[1] Subsequent undesignated statutory references are to the Civil Code.

[2] The lawsuits were consolidated in the trial court and are consolidated here on appeal.

[3] The underlying lawsuits are not part of the record on appeal.

Defendants and the spouses and significant others of those former patients; and we know the lawsuits arise out of medical care and treatment provided to Plaintiffs by Defendants and include claims for medical malpractice and loss of consortium.

As relevant here, we also know the parties entered into a global settlement agreement and general release (the Settlement Agreement) as to all 20 lawsuits. Section 3.1 of the Settlement Agreement provides the following:

"Defendants hereby agree to globally pay all Plaintiffs . . . the sum of Five Hundred . . . Seventy-Five Thousand Dollars ($575,000.00) . . . . Payment of the settlement shall be made as follows: (1) Two Hundred Fifty Thousand Dollars ($250,000) payment shall be delivered to [Plaintiffs' law firm] . . . on or before April 30, 2019; and (2) The balance of Three Hundred Twenty-Five Thousand Dollars ($325,000) shall . . . be delivered . . . on or before July 31, 2019. Plaintiffs shall be solely responsible for allocating the settlement proceeds between them. *Any portion of the aforementioned payments not paid in full by the deadlines set forth above would be assessed liquidated damages in the amount of Fifty Thousand Dollars ($50,000) per month, prorated at One Thousand Six Hundred Forty-Four Dollars ($1,644) per day until the balance is paid in full, with a cap not to exceed One Million Five Hundred Thousand Dollars ($1,500,000).*" (Italics added.)

Once payment was made in full, Plaintiffs would dismiss the lawsuits with prejudice.

Defendants and their counsel signed the Settlement Agreement on March 7, 2019. Most, but not all, of the Plaintiffs signed the Settlement Agreement in March and early April of 2019, but it was not fully executed when the first payment became due on April 30, 2019. The parties thus agreed "that the first payment . . . would not be due until after receipt of a fully executed Agreement." The last Plaintiff signed the Settlement Agreement on June 24, 2019. Thereafter, despite the fact that the Settlement Agreement was fully executed, Defendants made no payments.

3

Defendants filed a motion to enforce the Settlement Agreement pursuant to Code of Civil Procedure section 664.6, which provides, "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court . . . , for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."[4]  On or about November 7, 2019, the court granted the motion in part, finding the Settlement Agreement in general was valid and enforceable.  The court also ruled, however, that it "does not address the validity of the liquidated damages provision or determine the amount of liquidated damages since that request was not made or briefed by the parties."

Plaintiffs then filed a motion asking the court to determine the validity of the liquidated damages provision and the amount of liquidated damages, and to enter judgment against Defendants accordingly.  Plaintiffs argued the liquidated damages provision was reasonable under the circumstances and thus valid pursuant to section 1671.  They also argued the amount of liquidated damages owed totaled $818,084 as of the date of the hearing on the motion.  Plaintiffs' motion was accompanied by a declaration from their attorney, who stated that both sides were represented by counsel during the settlement negotiations, and that several drafts of the Settlement Agreement were exchanged before its terms were finalized.[5]  Plaintiffs' attorney also stated Defendants "had a single limit 'burning limits' insurance policy that was only in effect as to approximately six (6) plaintiffs.[6]  The other fourteen (14) were uninsured claims."

---

[4]  The Settlement Agreement expressly references Code of Civil Procedure section 664.6 and states the court shall retain jurisdiction to enforce the Settlement Agreement.

[5]  Indeed, we note that counsel for both parties signed the Settlement Agreement to indicate they had approved it.

[6]  A burning limits policy is a policy "under which the indemnification limit is reduced dollar for dollar by defense costs until zero is reached and the duty to indemnify and the

4

Finally, Plaintiffs' attorney explained, "Part of the discussions regarding the terms of the Agreement were concerns expressed by the Plaintiffs that they were agreeing to accept an amount far less than what their claims were worth with no guarantee that they would ever see compensation.  [¶]  Assurances were made that [Defendants] had money immediately available . . . to pay the first installment of $250,000.  However, Plaintiffs were understandably worried that the second payment would not be forthcoming thereby further reducing their settlement amounts.  As incentive to pay the installments as agreed to, the liquidated damages terms were agreed upon.  [¶]  The parties agreed that a reasonable estimate of the total verdicts had all the cases gone to trial was $1,500,000.00.  It was agreed that Plaintiffs would forgo their respective trials and accept a lesser amount in exchange for two payments totaling $575,000.00.  [¶]  It was further agreed that should [Defendants] default, [they] would be penalized in an amount not to exceed the agreed upon full value of $1,500,000.00.  Under this scenario, it was contemplated that the Plaintiffs would receive some monies immediately (as represented) and they would be compensated for any further delay in payment up to the full value of their claim.  The pro rated amount of $1,644.00 per day allowed [Defendants] to cure any lack of payment and stop any accruing penalties."

In opposition to the motion, Defendants argued the liquidated damages provision was unenforceable under section 1671 because the amount of such damages was not a reasonable estimate of the losses Plaintiffs would suffer due to delayed payment.[7] Defendants submitted no evidence of their own.

---

duty to defend are then terminated." (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 76, fn. 29.)  In other words, any costs Defendants incurred defending the lawsuits (including attorney fees) would reduce the amount of insurance available to pay Plaintiffs, either by judgment or settlement.

[7] Defendants raised several other arguments in their opposition that they do not repeat here.

5

The trial court found Defendants failed to establish the liquidated damages provision was unreasonable and thus invalid.  In so finding, it noted the parties were represented by counsel throughout the settlement negotiations, and the liquidated damages provision involved "significant negotiations" and "numerous drafts."  It also noted that, although the parties estimated Plaintiffs' recovery at trial was $1.5 million, Defendants only had insurance for six of the 20 lawsuits, which meant Plaintiffs might be unable to collect any judgments they obtained after trial.  Plaintiffs thus agreed to accept a significantly reduced settlement amount ($575,000) in exchange for assurances that Defendants would be able to pay that amount quickly.  The liquidated damages provision was negotiated in order to incentivize that prompt payment, and damages were capped at $1.5 million, which is the amount the parties estimated Plaintiffs would have recovered at trial.  The trial court thus entered judgment against Defendants in the amount of $1,393,084 (i.e., the $575,000 settlement amount plus $818,084 in liquidated damages).[8]

Defendants filed timely notices of appeal.[9]

## DISCUSSION

### 1.    *The Law on Liquidated Damages*

" 'The term "liquidated damages" is used to indicate an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement, and which may not ordinarily be modified or altered when damages actually result from nonperformance of the contract.'  [Citation].  'Liquidated damages constitute a sum which a contracting party agrees to pay . . . for breach of some contractual

---

[8]  Defendants do not challenge Plaintiffs' calculation of the amount of liquidated damages, and argue only that the liquidated damages provision is invalid.

[9]  The notices of appeal in this case were filed in December 2020.  After an unsuccessful attempt at mediation, this case was fully briefed on July 25, 2022, and subsequently assigned to this panel.

6

obligation.' " (*McGuire v. More-Gas Investments, LLC* (2013) 220 Cal.App.4th 512, 521.)

California law has long addressed the validity of liquidated damages provisions in contracts. Former section 1670, enacted in 1872, provided a liquidated damages provision was "void" unless it complied with former section 1671, which, in turn, provided, "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages." Cases interpreting former section 1671 "developed a two-part test for determining whether a liquidated damages provision was valid. The first tracks the statutory language: fixing the amount of actual damages had to be impracticable or extremely difficult. The second is a judicially crafted requirement: the amount selected must 'represent a reasonable endeavor by the parties to estimate fair compensation for the loss sustained.' " (*Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc.* (2006) 135 Cal.App.4th 1023, 1029.) The burden of proof was on the party seeking to enforce the liquidated damages provision. (See *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 738 ["The party seeking to rely on a liquidated damages clause bears the burden of proof"].)

In 1977, the Legislature adopted without change a California Law Revision Commission (the Commission) recommendation that repealed section 1670 and amended section 1671. In determining the legislative intent of a statute, it is proper to look to comments by the Commission, which are persuasive evidence of the intent of the Legislature in enacting the Commission's recommendations, particularly where, as here, the Legislature adopted the Commission's recommendation without change. (See *People v. Martinez* (2000) 22 Cal.4th 106, 129 [where Legislature adopts Commission's proposal, Commission's comments "are persuasive evidence of the Legislature's intent"]; *Brian W. v. Superior Court* (1978) 20 Cal.3d 618, 623 ["Explanatory comments by a law

7

revision commission are persuasive evidence of the intent of the Legislature in subsequently enacting the recommendations into law"]; *Pacific Trust Co. TTEE v. Fidelity Fed. Sav. & Loan Assn.* (1986) 184 Cal.App.3d 817, 823 ["Law Revision Commission comments are entitled to great weight in construing statutes proposed by the commission and adopted without substantial change"].) We thus refer to the Commission's recommendation and comments in the discussion below.

As amended, section 1671, subdivision (d), retains the prior law for consumer contracts and residential leases.[10] The Commission explained: "Subdivision (d) continues without substantive change the requirements of former Sections 1670 and 1671. The revision made in the former language of these sections is not intended to alter the substance of those sections as interpreted by the courts." (Cal. Law Revision Com. com., Deering's Ann. Civ. Code (2005 Ed.) foll. § 1671, p. 393.) In consumer cases, the amendment thus continues the rule that a liquidated damages provision is invalid unless (1) it would be impracticable or extremely difficult to fix the amount of actual damages, and (2) the amount selected is a reasonable estimate of the loss that would be sustained as a result of a breach.

For nonconsumer contracts like the Settlement Agreement in this case, however, subdivision (b) of section 1671 created "a *new general rule* favoring the enforcement of liquidated damages provisions." (Cal. Law Revision Com. com., Deering's Ann. Civ. Code (2005 Ed.) foll. § 1671, p. 392, italics added.) That rule provides, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party

---

[10] Section 1671, subdivision (d) provides that, in such cases, "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." (§ 1671, subd. (d).) This is essentially identical to the prior law that applied to all contracts.

8

seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (§ 1671, subd. (b).)

In explaining the amendment, the Commission stated, "This new statutory provision would . . . reverse the basic disapproval of liquidated damages provisions expressed in Sections 1670 and 1671 and in the judicial decisions. Under the new provisions, parties with relatively equal bargaining power would be able to develop and agree to a reasonable liquidated damages provision with assurance that the provision will be held valid." (Recommendation Relating to Liquidated Damages (Dec. 1976) 13 Cal. Law Revision Com. Rep. (1976) p. 1742.) The Commission also emphasized that the new rule reversed the burden of proof that had applied under prior law: "In the cases where subdivision (b) applies, the burden of proof on the issue of reasonableness is on the party seeking to invalidate the liquidated damages provision." (Cal. Law Revision Com. com., Deering's Ann. Civ. Code (2005 Ed.) foll. § 1671, p. 393.) Finally, and importantly, the Commission stated that, when determining whether a particular liquidated damages provision was reasonable, "*All* the circumstances existing at the time of the making of the contract are considered, *including* the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. *Other relevant considerations* in the determination of whether the amount of liquidated damages is so high or so low as to be unreasonable *include, but are not limited to*, such matters as the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving causation and foreseeability, and whether the liquidated damages provision is included in a form contract." (*Ibid*., italics added; see also *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654-656 [quoting Commission's comment, and using it to decide validity of particular liquidated damages provision].) In nonconsumer cases, then, courts are directed to

9

consider *all* circumstances, not just whether it would be difficult to fix the amount of actual damages and whether the amount selected is a reasonable estimate of the loss that could be anticipated.

## 2.    *Analysis*

Whether a liquidated damages provision is invalid under section 1671 is generally a question of law subject to de novo review, " 'but the factual foundation for appellate review consists of (1) the facts that are not in dispute and (2) the facts that are established by viewing the conflicting evidence in the light most favorable to the trial court's judgment.' " (*Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 724.)  Here, the only evidence before the trial court was the Settlement Agreement itself and the uncontradicted declaration of Plaintiffs' counsel.

We note that, in a footnote in their opening brief, Defendants contend this declaration from Plaintiffs' counsel is "problematic" because, among other reasons, it contains parole evidence that contradicts the terms of the Settlement Agreement, and the trial court should thus have "disregarded" it.  In their reply brief, they complain it also contains inadmissible hearsay.  Because Defendants did not raise any objection to the declaration in the trial court, they have waived their right to object on appeal.  (See Evid. Code, § 353 [finding shall not be set aside and decision shall not be reversed due to erroneous admission of evidence unless timely objection was made]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411 ["failure to object to the admission of improper . . . evidence waives the right to raise the issue on appeal"]; *Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 584 ["questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection"].)  Moreover, "[f]ootnotes are not the appropriate vehicle for stating contentions on appeal." (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.)  Finally, arguments raised for the first time in a reply will not be considered.  (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)  Like the trial court, we thus consider this declaration.

10

Defendants argue the Settlement Agreement's liquidated damages provision is unreasonable and thus invalid under section 1671. They acknowledge it is their burden to establish "the provision was unreasonable under the circumstances existing at the time the [Settlement Agreement] was made." (§ 1671, subd. (b).) In the trial court, they submitted no evidence and offered less than one and a half pages of argument. We agree with the trial court that Defendants failed to meet their burden.

On appeal, Defendants rely primarily on two cases (neither of which they cited below) involving the enforceability of a liquidated damages provision in a settlement agreement: *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495 (*Greentree*), and *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796 (*Vitatech*). Because they are so central to Defendants' argument, we discuss both cases in some detail.

The plaintiff in *Greentree* sued the defendant for breach of contract, alleging it failed to pay $45,000 due under the contract. On the day of trial, the parties settled the case by executing a stipulation for entry of judgment. The stipulation provided the defendant would pay the plaintiff $20,000 in two installments of $15,000 and $5,000, and if the defendant defaulted on either installment, the plaintiff would be entitled to have judgment entered for the amount prayed for in the complaint, plus interest, attorney fees and costs, less any amounts already paid. (*Greentree, supra*, 163 Cal.App.4th at p. 498.) The defendant defaulted on the first payment, and the plaintiff asked the trial court to enter judgment pursuant to the stipulation. The trial court entered judgment in the amount of $61,232.50, consisting of the $45,000 prayed for in the complaint, plus $13,912.50 in prejudgment interest, $2,000 in attorney fees, and $320 in costs. (*Ibid*.) The defendant appealed, arguing a judgment of $61,232.50 for failure to make a $15,000 payment constitutes enforcement of an illegal penalty, and the appellate court agreed. (*Id*. at pp. 498-501.)

11

The court interpreted the stipulation as a liquidated damages provision that, in substance, imposed $61,232.50 in liquidated damages for breach of the defendant's obligation to pay the first $15,000 installment when due. The court noted the validity of a liquidated damages provision is governed by section 1671, subdivision (b). It also noted, " 'A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671[, subdivision] (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach.' " (*Greentree, supra*, 163 Cal.App.4th at p. 499, quoting *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 (*Ridgley*).) The court then held the amount of the judgment entered pursuant to the stipulation "bears no reasonable relationship to the range of actual damages the parties could have anticipated from breach of the stipulation to settle the dispute for $20,000." (*Greentree*, at p. 500.) The court explained that damages for failing to pay money are " 'easily determinable' " and are limited to " 'interest at the prevailing rate' " and (perhaps) "reasonable costs [incurred] in pursuing the payment." (*Ibid*.) The court concluded, "The stipulated judgment of $61,232.50 would result in a penalty assessment of approximately $40,000 more than the total $20,000 due under the stipulation. A late payment penalty of approximately $40,000 bears no reasonable relationship to any actual damages that might flow from [the defendant's] failure to make the first installment payment." (*Id*. at p. 501.) The court thus remanded to the trial court with directions to reduce the judgment to $20,000. (*Id*. at p. 503.)

*Vitatech* is similar. There, the plaintiff entered into a contract with the defendant to manufacture certain products. When the defendant failed to pay for those products, the plaintiff sued it for breach of contract, and sought approximately $166,000 in damages. The parties ultimately agreed to settle the lawsuit on the following terms: the defendant would pay $75,000 on or before June 5, 2015, and if it failed to do so, judgment would be entered against it in the amount prayed for in the complaint. (*Vitatech, supra*,

12

16 Cal.App.5th at pp. 801-802.) The defendant failed to make the settlement payment, and the plaintiff asked the trial court to enter judgment pursuant to the stipulation. The trial court entered judgment against the defendant in the amount of $303,620.12, comprised of the amount prayed for the complaint, plus approximately $137,000 in prejudgment interest, attorney fees, and costs. (*Id*. at p. 802.) The defendant appealed, arguing the judgment was void because it violated section 1671's prohibition against liquidated damages that bear no reasonable relationship to the damages likely to be caused by the breach of contract. The appellate court agreed. (*Vitatech*, at p. 808.)

The court noted that although the "stipulation for entry of judgment does not use the phrase liquidated damages, . . . its legal effect is the same as a liquidated damages provision" because it "predetermines the amount of damages [the plaintiff] is entitled to receive if [the defendant] breached the stipulation by failing to timely pay the settlement amount." (*Vitatech, supra*, 16 Cal.App.5th at p. 810.) Citing its earlier decision in *Greentree*, the court held the judgment was void because there was no reasonable relationship between the damages that could have been anticipated based on the defendant's failure to pay the $75,000 settlement amount when due and the $303,000 stipulated judgment. (*Id*. at p. 808.) In essence, the court found the stipulation imposed a late fee that was four times the amount of the payment owed, and a late fee in such a high amount constituted illegal liquidated damages as a matter of law. The court remanded to the trial court with directions to reduce the judgment to $75,000. (*Id*. at p. 815.)

Defendants argue the Settlement Agreement in this case is similar to the settlement agreements in *Greentree* and *Vitatech* and must be invalidated for the same reasons. According to Defendants, the Settlement Agreement imposes liquidated damages for the failure to pay money at a rate that is nearly three times the amount owed, which is "absurdly usurious" and is invalid pursuant to section 1671 because it is not tailored to any harm Plaintiffs might suffer due to Defendants' failure to make the required payments when due. We disagree, for two reasons, one legal and one factual.

13

First, *Greentree* and *Vitatech*, relying on *Ridgley*, held a settlement agreement that imposes liquidated damages is invalid under section 1671 unless the amount has a reasonable relationship to the damages the parties could have anticipated based on the failure to pay the settlement. As discussed above, that was the rule under the prior law, and it is still the rule in consumer cases. As Defendants acknowledge, however, this case is governed by the current rule for nonconsumer contracts, which provides liquidated damages provisions are "valid unless the party seeking to invalidate the provision [here, Defendants] establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (§ 1671, subd. (b).) Whether the amount of liquidated damages reflects a reasonable estimate of actual damages is certainly something the court must consider when determining whether the provision is unreasonable, but it is not the *only* thing. Instead, and as noted above, courts are directed to consider "***All*** the circumstances existing at the time of the making of the contract . . . , *including* the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. *Other relevant considerations* in the determination of whether the amount of liquidated damages is so high or so low as to be unreasonable *include, but are not limited to, such matters as the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, . . . and whether the liquidated damages provision is included in a form contract*." (Cal. Law Revision Com. com., Deering's Ann. Civ. Code (2005 Ed.) foll. § 1671, p. 393, italics and bold added; see also *People v. Aguirre* (2021) 64 Cal.App.5th 652, 661 [word "include" is " ' " 'ordinarily a term of enlargement rather than limitation' " ' "].)

Here, the trial court considered the fact that the "settlement was negotiated with the assistance of counsel and after numerous drafts were exchanged between the parties," and the liquidated damages provision in particular involved "significant negotiations." In other words, these were parties with relatively equal bargaining power who were

14

represented by counsel, and the liquidated damages provision was not part of a form contract such that Defendants might have been unaware of what they were agreeing to. The Legislature has expressly directed courts to consider circumstances such as these, and all of these circumstances support the trial court's finding that the provision is not unreasonable. (See *Weber, Lipshie & Co. v. Christian, supra*, 52 Cal.App.4th at pp. 655-656 [upholding liquidated damages provision and citing fact that party challenging provision read it and consulted with an attorney before signing it].)

The trial court also considered other circumstances that existed at the time the Settlement Agreement was made. For example, it noted that Plaintiffs understood they might not be able to collect anything from Defendants if they went to trial, because Defendants only had insurance for six of the 20 claims, and because Defendants' burning limits insurance policy meant that costs and fees incurred defending the lawsuits would reduce the insurance money available to pay Plaintiffs (indeed, defense costs would even reduce the amount of insurance money available to pay any settlement). Plaintiffs thus agreed to accept a significantly reduced settlement amount ($575,000) in exchange for assurances that Defendants would be able to pay that reduced amount quickly. The liquidated damages provision was negotiated in order to incentivize prompt payment, and damages were capped at $1.5 million, which is the amount the parties estimated Plaintiffs would have recovered at trial (and we note the cap was not reached). Again, because courts are directed to consider "*All* the circumstances existing at the time of the making of the contract," (Cal. Law Revision Com. com., Deering's Ann. Civ. Code (2005 Ed.) foll. § 1671, p. 393, italics added), we find it was appropriate for the trial court to consider these circumstances, and all of them support its finding that Defendants failed to meet their burden of establishing the liquidated damages provision was unreasonable.

Defendants suggest that the amount Plaintiffs were estimated to recover if their lawsuits had proceeded to trial is irrelevant to the analysis under section 1671, and the only thing a court may consider is the damages that might reasonably be expected to flow

15

from breach of the settlement agreement itself. We disagree. It is true that *Greentree* and *Vitatech* both noted the parties "did not attempt to anticipate the damages that might flow from a breach of the [settlement]. Rather, they simply selected the amount [the plaintiff] had claimed as damages in the underlying lawsuit." (*Greentree, supra*, 163 Cal.App.4th at p. 499; see also *Vitatech, supra*, 16 Cal.App.5th at p. 811 ["the parties simply selected the amount Vitatech had sought as damages in the underlying lawsuit"].) Both cases also held it was generally inappropriate to consider the amount owed on the underlying contract when analyzing the reasonableness of the liquidated damages provision because "the breach we are analyzing is the breach of the *stipulation* [i.e., the settlement agreement], not the breach of the *underlying contract*." (*Greentree*, at p. 499; see also *Vitatech*, at p. 810 ["the amount of the [stipulated] judgment must reasonably relate to the damages likely to arise from the breach of the stipulation, not the alleged breach of the underlying contract"].) But both cases also suggested the amount allegedly owed on the underlying contract could be relevant if there was evidence in the record that showed the plaintiff would have recovered that amount if the lawsuit had proceeded to trial. (See *Vitatech*, at p. 811 ["The record . . . lacks any evidence suggesting Vitatech was likely to recover all of the damages it sought if it proceeded to trial"]; *Greentree*, at pp. 499-500 [noting "appellate record contains nothing showing Greentree's chances of complete success on the merits of its case"].) This case is factually distinguishable from *Greentree* and *Vitatech* because the uncontradicted evidence in the record is that the parties agreed $1.5 million was a reasonable estimate of the total verdicts Plaintiffs would have recovered had their cases gone to trial, which is why they capped liquidated damages at that amount. We find nothing unreasonable about parties (particularly represented parties) agreeing to settle a lawsuit for a steep discount, and also agreeing that if the

16

settlement amount is not paid, judgment will be entered on the amount the parties estimated would have been recovered at trial.[11]

Although the facts are different, *Creditors Adjustment Bureau, Inc. v. Imani* (2022) 82 Cal.App.5th 131 came to a similar conclusion. There, the plaintiff sued the defendant for breach of a commercial lease, and the parties acknowledged the amount due under the lease was $251,200.13. On the eve of trial, the parties entered into a stipulation for entry of judgment that provided the defendant (who was pro. per.) would pay $30,000 in 24 monthly installments, and if he defaulted, judgment would be entered in the full amount due under the lease. (*Id*. at p. 134.) The defendant defaulted, and judgment was entered against him for $251,200.13. He thereafter filed a motion to vacate the judgment, arguing it was void because it effectively imposed liquidated damages in an amount that bore no reasonable relationship to the damages the parties could have anticipated would be caused by his failure to pay the settlement amount. (*Id*. at pp. 134-135.) The appellate court disagreed. Among other things, it noted, "We cannot isolate the relevant breach of contract as only the breach of settlement agreement . . . and excluding the underlying contract." (*Id*. at p. 136.) We agree. When evaluating the reasonableness of the liquidated damages provision in this case, we cannot isolate only the breach of the Settlement Agreement and ignore the underlying medical malpractice lawsuits or the parties' estimate that, had Plaintiffs proceeded to trial on those lawsuits they would have recovered $1.5 million. Again, the Legislature has directed courts to consider "all" circumstances when considering whether a liquidated damages provision is unreasonable, and when the liquidated damages provision is part of

---

[11] We might feel differently if Defendants had not been represented, or if liquidated damages were not capped such that Defendants faced liability far in excess of what they would have faced had they gone to trial, but that is not the case here.

17

a settlement agreement, we find nothing unreasonable about considering what Plaintiffs gave up by settling the underlying lawsuits.

One final note. *Greentree* and *Vitatech* both acknowledge that section 1671 was amended in 1977, but they held the amendment did not change the rule that a liquidated damages provision is invalid unless the amount bears a proportional relationship to the damages that might actually flow from a breach. (*Greentree, supra*, 163 Cal.App.4th at pp. 497-498, 501, fn. 2; *Vitatech, supra*, 16 Cal.App.5th at p. 814.) Both cases cited our Supreme Court's decision in *Ridgley, supra*, 17 Cal.4th 970 to support that holding. *Ridgley* was decided after section 1671 was amended. In it, our Supreme Court considered whether a late charge in a loan agreement was an unenforceable liquidated damages provision pursuant to section 1671. The loan was for $2.3 million; repayment of the principal was due in two years, and monthly interest payments were due on a set date each month. The loan agreement provided the principal could be repaid early, but if it was repaid early, the borrower would owe a "prepayment charge" equal to six months of interest, *unless* all scheduled interest payments were made on time and there were no other defaults. (*Ridgley*, at p. 974.) The borrower repaid the principal early, but because one of the monthly interest payments had been late, the bank claimed it was entitled to a prepayment charge of approximately $113,000. The borrower argued the prepayment charge was unenforceable under section 1671 and the Supreme Court agreed, finding the charge substantively constituted liquidated damages for breach of the loan agreement. (*Ridgley*, at pp. 979-981.) It also held the charge was invalid because the amount (i.e., six months of interest) was not a reasonable estimate of the damages the bank was likely to suffer due to one late interest payment. (*Id*. at pp. 980-981.) This holding, in turn, was based, in part, on *Garrett v. Coast & Southern Fed. Sav. & Loan Assn., supra*, 9 Cal.3d 731, which was decided several years before section 1671 was amended, and which also involved a late charge in a loan agreement. The *Garrett* court held such a charge was invalid under section 1671 unless the amount was a reasonable estimate of the damages

18

that may be sustained due to the late payment (*Garrett*, at p. 739), and the *Ridgley* court followed this holding (*Ridgley*, at pp. 979-980). Although the *Ridgley* court noted section 1671 was amended in 1977, it stated in a footnote that "[n]othing in the 1977 legislation indicates an intent to abrogate *Garrett*'s analysis of unjustified late fees as unenforceable penalties . . . ." (*Ridgley*, at p. 981, fn. 5.)

We are, of course, bound by *Ridgley*, but *Ridgley* is distinguishable from this case for two reasons. First, *Ridgley* did not consider or address the Commission's instruction that "*All* circumstances existing at the time of the making of a contract" should be considered when determining whether a liquidated damages provision in a nonconsumer contract is unreasonable. (Cal. Law Revision Com. com., Deering's Ann. Civ. Code (2005 Ed.) foll. § 1671, p. 393, italics added.) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

Second, the facts in *Ridgley* are different than the facts here and it is "axiomatic" that a case's holding "is 'informed and limited by the fact[s]' of the case in which it is articulated." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 790, fn. 11.) *Ridgley* involved a late charge in a loan agreement that was triggered when one payment was late. This case, in contrast, involves an agreement to settle 20 medical malpractice lawsuits for a steep discount, with correspondingly steep liquidated damages imposed if the settlement payments are not made. The liquidated damages provision was actively negotiated and approved by counsel, and the parties expressly acknowledged the court retained jurisdiction to enforce the Settlement Agreement pursuant to Code of Civil Procedure section 664.6. When Defendants did not make the settlement payments, Plaintiffs filed a motion to enforce the Settlement Agreement, only to have Defendants argue the liquidated damages provision was invalid. Had Defendants not agreed to pay a reduced amount quickly (with a steep liquidated damages provision if they defaulted on that promise), Plaintiffs might have preferred taking their cases to trial. By agreeing to, and then repudiating, the Settlement Agreement, Defendants have effectively taken that

19

option away from Plaintiffs. We are not convinced that *Ridgley* creates a rule that allows a defendant in a lawsuit—particularly one who is represented by counsel—to actively negotiate a settlement agreement with a liquidated damages clause (and thus to effectively halt the plaintiff's prosecution of the case), to default on that agreement, and then to resist entry of judgment by arguing the clause is invalid because the damages it agreed to are too high. Put another way, we are not convinced that *Ridgley* creates a rule that allows represented defendants to assert what might be called the " 'hey neener neener, gotcha sucker' " defense. (*Wald v. TruSpeed Motorcars, LLC* (2010) 184 Cal.App.4th 378, 394; see also *Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 210 [holding insurance company cannot promise coverage and "then barefaced repudiate that promise by pointing to an integration clause in the written contract, and saying in effect, hey 'neener, neener' "].)

We find the trial court in this case properly considered *all* of the circumstances existing at the time the Settlement Agreement was negotiated, and it concluded Defendants failed to meet their burden of establishing the liquidated damages provision was unreasonable under the circumstances existing at the time the contract was made. We agree with the trial court. To quote our colleagues in *Creditors Adjustment Bureau*, " 'The purpose of the law of contracts is to protect the reasonable expectations of the parties . . . . There is . . . a price to be paid for breach of contract.' [Citation.] Here, we protect the reasonable expectations of the parties. And there is still a price to be paid for breach of contract." (*Creditors Adjustment Bureau, Inc. v. Imani, supra*, 82 Cal.App.5th at p. 133.) So, too, in this case. We find nothing unreasonable about holding Defendants to the price they agreed to pay for failing to keep their promise.

20

## DISPOSITION

The judgment is affirmed and Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


    /s/
EARL, J.


I concur:


    /s/
ROBIE, Acting P. J.

Renner, J., Concurring.

I would affirm the judgment because defendants have not demonstrated the trial court erred in concluding they did not meet their burden to establish the liquidated damages provision was "unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b).) "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under [Civil Code] section 1671[, subdivision ] (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.' " (*Ridgley v. Topa Thrift & Loan Ass'n* (1998) 17 Cal.4th 970, 977.) Here, the trial court found that the parties participated in significant negotiations to reach a fair amount of compensation for plaintiffs if defendants failed to pay the settlement amount. In particular, the parties agreed plaintiffs' claim would yield a $1.5 million judgment if they continued to trial, but was worth $575,000 to plaintiffs if payment was made quickly. The settlement agreement incentivized immediate payment by defendants but capped damages for its breach at the $1.5 million worth of plaintiffs' underlying claims. I conclude the trial court did not err in concluding defendants failed to meet their burden. (See *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 811 ["The record . . . lacks any evidence suggesting Vitatech was likely to recover all of the damages it sought if it proceeded to trial"]; *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, 499-500 [noting "appellate record contains nothing showing

1

Greentree's chances of complete success on the merits of its case"].)  For this reason alone, I would affirm the judgment.


                                        _____/s/_____
                                        RENNER, J.